## HUSTON v. TYLER, *Appellant.*

### Division Two, June 22, 1897.*

1. **Assumpsit:** INDUCEMENT: LOAN: PROCURING NOTE. The petition alleged a specific contract on part of defendant to procure a note signed by four persons; that defendant presented to plaintiff a note purporting to be signed by said four persons, and plaintiff believing defendant's representations was thereby *induced* to loan the principal maker $2,500; that the names on said note afterward proved to be a forgery except as to the principal maker, whose agent defendant claimed to be. *Held*, that the petition states an action in assumpsit, based on a specific contract on the part of the defendant to procure and deliver to plaintiff the note of the parties named, *and* without proof of such specific contract or inducement plaintiff can not recover.

2. **Enlargement of Pleading:** IMPLIED WARRANTY. Plaintiff having bottomed his action on an express warranty by defendant that the signatures to the note were genuine, is precluded from relying on an implied warranty to the same effect. A party will not be permitted to sue upon one cause of action, and recover upon another.

3. **Good Pleading.** The *fundamental requirement* of good pleading, whether under the code or at common law, is that the petition must be so drawn as to tender a definite issue or issues, and not be so obscure as to require the defendant to grope in the dark to discern what the meaning of the pleading is.

4. **Responsibility of Loan Agent.** Defendant having disclosed to plaintiff that he was acting simply as the agent of the principal maker of the note in procuring the loan, is not responsible because such principal rendered the note worthless by forging thereto the names of the other makers.

*NOTE. Reversed June 30, 1896; rehearing allowed, and again reversed June 22, 1897.

5. **Question for Jury.** The evidence was conflicting as to whether defendant disclosed to plaintiff at the time the loan was made the fact that he was simply the agent of the principal maker of the note; *held*, that this fact was a question for the jury; *held*, also, that in face of such evidence a peremptory instruction to find for plaintiff was error.

*Appeal from Buchanan Circuit Court.*—Hon. H. M. Ramey, Judge.

Reversed and remanded.

*Thomas J. Porter, Ben. J. Woodson,* and *B. R. Vineyard* for appellant.

(1) An agent acting in good faith for his principal whose name is disclosed to a third person with whom he may be dealing as such agent, can not be held personally liable to such third person, in the absence of a special agreement on the part of such agent to become individually responsible. Mechem on Agency, secs. 546 and 555. (2) This principle of non-liability of an agent, where the name of his principal is disclosed, is as much applicable to note brokers, or those engaged in borrowing money for others, as to any other kind of agents. Tiedeman on Com. Paper, sec. 245; Mechem on Agency, secs. 929 and 956; *Lyons v. Miller,* 6 Gratt. 427. (3) As said by the New York Court of Appeals, on the subject of implied warranty: "The question as to whether there was an implied warranty depends upon the facts as to whether the defendant was an agent, and disclosed his agency to the plaintiff, or whether that fact was known and understood by its officers in making the purchase." *Bank v. Gallaudet,* 120 N. Y. 308; *Worthington v. Cowles,* 112 Mass. 30; Mechem on Agency, secs. 546 and 556; *Whitney v. Wyman,* 101 U. S. 392. (4) Defendant had a right to go to the jury upon the circumstances attending the transactions which apprised plaintiff of his agency. If

plaintiff knew, or from the circumstances ought to have known, that defendant was dealing simply as the agent of Smith, then plaintiff should not have recovered. *Worthington v. Cowles*, 112 Mass. 30; *Klosterman v. Loos*, 58 Mo. 290; *Hartzell v. Crumb*, 90 Mo. 639; Mechem on Agency, sec. 546. (5) With the admission of good faith and the proof by defendant and his witnesses that plaintiff had been informed of the fact that defendant was acting solely for and as the agent of Smith, it is quite apparent that the court had no right to instruct the jury peremptorily to find for plaintiff. *Page v. Lathrop*, 20 Mo. 594. (6) Plaintiff's petition being based on what plaintiff charges to be an express agreement between himself and defendant, he ought not to have been permitted to recover in the absence of proof of that agreement. He could not recover on account of tortious act of the defendant. *Ogden v. Reymond*, 22 Conn. 385; *Carson v. Cummings*, 69 Mo. 325; *Sumner v. Rogers*, 90 Mo. 324. (7) Nor could he recover on any implied warranty as to the genuineness of the signatures to the note. An express agreement or warranty excludes the idea or consideration of an implied one. *Internal & Co. v. Smith*, 17 Mo. App. 264; *Baldwin v. Van Deusen*, 37 N. Y. 487; *Denny v. Foster*, 42 N. H. 175; *McGrew v. Fletcher*, 35 Mich. 104; *Yeats v. Ballentine*, 56 Mo. 539; *Carson v. Cummings*, 69 Mo. 325; *Sumner v. Rogers*, 90 Mo. 324. (8) The contract set up in the petition charging that defendant agreed (not alleged or proven to be in writing) to procure and deliver to plaintiff the note of the character and description mentioned therein, is within the the statute of frauds. *Allen v. Richard*, 83 Mo. 55; *Springer v. Kleinsorge*, 83 Mo. 152; *Fine v. Hornsby*, 2 Mo. App. 61; 8 Am. and Eng. Ency. of Law, p. 710.

*Brown & Pratt, Vinton Pike,* and *Willard P. Hall* for respondent.

(1) An agent warrants his authority to act for those for whom he assumes to act; and this is true, although the agent may honestly believe that he has the authority and makes no express representation thereof.    Mechem on Agency, secs. 542–546; Story on Agency, sec. 264; *Farmers' Trust Co. v. Floyd,* 26 N. E. Rep. 110; *White v. Madison,* 26 N. Y. 117; Bishop on Con. 1120; Wharton on Agency, sec. 524; 1 Parsons on Con. [6 Ed.] 67.    (2) The measure of damages in such case is what the other party to the contract would have been entitled to recover on the contract had it been authorized.    3 Sutherland on Dam., pp. 52–59.    (3) The petition in this case is not based upon an agreement by Tyler to procure a note signed by the parties named; the agreement is set out by way of inducement in connection with all the other facts connected with the transaction.    The cause of action grows not out of the single fact referred to, but out of all the facts stated in the petition.    It was at common law a mooted question as to whether the form of action on the facts stated was properly in assumpsit or on the case.    But under our code there is only one form of action.    All the facts being stated in the petition, the plaintiff is entitled to the relief, if any, which the law gives him on those facts.    *Trust Co. v. Floyd,* 26 N. E. Rep. 110; *White v. Madison,* 26 N. Y. 117.

*Brown & Pratt, Vinton Pike,* and *Willard P. Hall* for respondent on motion for rehearing.

(1) The court overlooked the distinction between this case where the agent undertook and assumed to complete the contract by delivering the note to the payee

named therein, and the case in which an agent or broker sells a completed note. *Jefts v. York,* 10 Cush. 592; *Byars v. Doore, Adm'r,* 20 Mo. 284; Wharton on Agency [Orig. Ed.], secs. 524, 541; Story on Agency [8 Ed.], sec. 264; 1 Parsons on Con. [6 Ed.], pp. 66, 67; Bishop on Con., sec. 1120. (2) The court overlooked the fact that the defendant made no objection in the trial court that there was a variance between the proof and the allegations of the petition. Such objection can not be made in this court for the first time. *Bank v. Leyser et al.,* 22 S. W. Rep. 504; *Meyer v. Chambers,* 68 Mo. 626; *Fischer v. Max,* 49 Mo. 404. But there was no variance. The rule is that the pleader may declare an express non-special contract and recover upon proof of an implied promise. But he can not declare on a special contract, and recover upon proof of an implied promise, nor *vice versa*. *Foerster v. Foerster,* 38 N. E. Rep. 426. (3) The court erred in holding that this was an action on contract, and that at common law the action would have been denominated "express assumpsit." *Byars v. Doore, Adm'r,* 20 Mo. 284; *Hamlin v. Abell,* 120 Mo. 198; *Ballon v. Talbott,* 16 Mass. 461; *Lane v. Corr,* 25 Atl. Rep. 820; *Cole v. O'Brien,* 51 N. W. Rep. 316; *Abbey v. Chase,* 6 Cush. 54; *Ogden v. Raymond,* 22 Com. 379; *Bartlett v. Tucker,* 104 Mass. 339; *McHenry v. Duffield,* 7 Black. 41; *Hall v. Crandall,* 29 Cal. 568; *Duncan v. Niles,* 32 Ill. 532; *Long v. Colburn,* 11 Mass. 97; *Ibets v. York,* 10 Cush. 392; 1 Chitty on Plead. *138. (4) The court erred in holding that there was no proof of the agreement between plaintiff and defendant as pleaded. (5) The court erred in holding that the instruction given by the trial court, directing the jury to find for the plaintiff, would have been improper, even if there had been no conflict in the testimony. (6) The court erred in holding that on the

facts stated by the plaintiff the question should have been submitted to the jury whether he knew, or could have known by the use of reasonable diligence, that the defendant was acting as the agent of Thomas Smith.

*Porter & Woodson* and *B. R. Vineyard* for appellant on motion for rehearing.

(1) The case of *Hamlin v. Abell*, 120 Mo. 188, in no way conflicts with the opinion of the Supreme Court, as already rendered in this case. (2) An express agreement or warranty excludes the idea or consideration of an implied one. *International Co. v. Smith*, 17 Mo. App. 264; *Baldwin v. Van Deusen*, 37 N. Y. 487; *Denny v. Foster*, 32 N. H. 175; *McGrew v. Fletcher*, 35 Mich. 104; *Waldhier v. Railroad*, 71 Mo. 514; *Schneider v. Railroad*, 75 Mo. 295; *Fuchs v. City*, 34 S. W. Rep. 513; *Harty v. Railroad*, 95 Mo. 368. (3) In actions for deceit the petition must charge that the false representations were fraudulent. *Hamlin v. Abell*, 120 Mo. *loc. cit.* 201. (4) The court erred in instructing the jury to find for the plaintiff. Mechem on Agency, sec. 546; Wharton on Agency, sec. 531; *Worthington v. Cowles*, 112 Mass. 30. (5) The argument of counsel on the motion for a rehearing, referring to the liability of sub-agents, can have no application to this case. There could be no sub-agency under the evidence introduced.

SHERWOOD, J.—Action for the sum of $2,500. The nature of the action best appears from the petition, which, omitting caption, etc., is the following:

"That the defendant was at the time hereinafter mentioned, and now is engaged at the said city of St. Joseph, in the business of obtaining loans of money for others on their promissory notes, and that the

VOL. 140 mo—17

plaintiff well knew him to be engaged in said business; that the defendant at said city, on the 8th day of April, 1892, prosecuting the business aforesaid,* entered into a contract and agreement with the plaintiff by which the latter agreed to loan twenty-five hundred dollars upon the promissory note of the following parties, to wit, Thos. M. Smith, Pat Curtin, Philip Weckerlin and Jane E. Smith, which said note the defendant undertook and agreed to procure and deliver to plaintiff; that thereafter the defendant presented and delivered to the plaintiff a promissory note for the sum of twenty-five hundred dollars, purporting to be signed by all of said parties, and represented to the plaintiff that it was the note agreed upon between them; that the plaintiff believed defendant's representation to be true, and relying thereon and being induced thereby, he loaned the sum of twenty-five hundred dollars upon said note and delivered said sum to the defendant and received said note; that the said note was not in fact signed by any of the parties' whose names appear signed thereto, except Thomas M. Smith; that on the contrary, the signatures of all the other parties to said note were forged thereto; that the said Thomas Smith was at all the times herein mentioned and is now insolvent; that payment of said note has been demanded of said Smith, and all the other parties whose names appear signed thereto, and payment has been refused; that no part of the said note, principal or interest, has been paid; that the plaintiff has tendered the said note to defendant, and has demanded of him payment of said sum of twenty-five hundred dollars, with interest thereon, which has been refused by defendant; that the plaintiff now tenders said note into court for the use of the defendant. Wherefore the plaintiff prays judgment against the defendant for the sum of twenty-five hundred dollars, with interest thereon at the rate of

six per cent per annum from said 8th day of April, 1892."

The answer of defendant consisted, in substance, of a general denial, and then of the following: "Defendant admits that he was at the time mentioned in plaintiff's petition, engaged at the city of St. Joseph in the business of obtaining loans of money for others which was known to plaintiff; and that in the prosecution of said business he did on or about April 8, 1892, apply to plaintiff for a loan of twenty-five hundred dollars, but defendant states the fact to be that he did, at said time, at the instance and request of Thomas M. Smith, and as his agent only, apply to plaintiff for a loan of said sum of money for said Smith, fully informing plaintiff who his principal was, and that said Smith proposed the names of Pat Curtin, Philip Weckerlin and Jane E. Smith as his sureties; that plaintiff having agreed to make said loan, defendant so informed said Smith, and received from him the note mentioned in plaintiff's petition to be by defendant conveyed and delivered to plaintiff; that as such agent of said Smith, defendant delivered said note to plaintiff and received from him the amount of said loan and paid the same to said Smith, less the commission due him, for his services in negotiating said loan.    Defendant states that he received said note from said Smith believing all the signatures thereto were genuine; and plaintiff received the same from defendant knowing. at the time that defendant was acting in the delivery thereof and in the receipt of said money as such agent of said Smith, and relying upon the representations of said Smith that the signatures thereto were genuine."

Plaintiff's reply was a general denial, etc.

The evidence on part of plaintiff himself tended to show that while he was in his office on the sixth or seventh of April, 1892, he received a message over the

telephone from defendant asking if he would loan $2,500 for three months on the following names: Thomas M. Smith, Pat Curtin, Philip Weckerlin and Jane Smith.  Defendant being asked by plaintiff if they (the above named parties) would make a good note, replied, it would be A. 1 or gilt-edged, or something of that kind, but that plaintiff had better investigate the solvency for himself. On investigation plaintiff ascertained that though Thomas Smith had nothing, yet the others were large property owners, etc.  Plaintiff then called defendant by telephone, and told him he would make the loan, when defendant replied, "I will get up the note, or get the note, and bring it to you."

On the morning the note bears date, defendant came into plaintiff's office, and said, "Here's your note, or the note; I want my money, or the money." That thereupon plaintiff asked to whom the check for the amount was to be given, when defendant replied, "Myself; it is to be in my name;" whereupon plaintiff said: "That is all right; you are good to me for the amount," and drew a check for $2,500, payable to defendant, handed it to him and received in return from defendant a note for a like sum, due in three months, on which note were the names which had been mentioned over the telephone.  That defendant did not state to plaintiff for whom he was obtaining the money. But plaintiff did not suppose defendant was getting the money for himself, but supposed he was getting the money for those whose names were on the note.

When the note fell due it was not met, and it was ascertained that the names of all on it but Thomas Smith's were forgeries; and it was admitted at the trial on part of plaintiff that in all of defendant's transactions connected with the note, defendant acted ni good faith, and without knowledge of the non-genuineness of the signatures aforesaid.

Testifying on his own behalf, defendant at first said: "Tom Smith came to me and said he wanted to borrow $2,500. I told him I thought I could get the money. I went to my telephone, and telephoned Mr. Huston, and asked him if he had $2,500 to loan. (Tom told me he wanted to give, as security, his aunt, Jane Smith, Patrick Curtin and Philip Weckerlin.) I told Mr. Huston that Thomas Smith wanted to borrow $2,500, and would give as security his aunt, Jane Smith, Patrick Curtin and Philip Weckerlin. Mr. Huston asked me, 'Is that a good note?' I told him I thought it was, but I preferred that he would make his own examination, and see to it. He says: 'Then I will do so; I will see to it, and let you know.' The next day Mr. Huston called me up and said I could have the money on that Smith note." Defendant further detailed in evidence that Smith, on being informed that he could get the money, signed a note for $2,500 prepared for him by defendant and gave it to one Asbury to have it signed by the other parties to it, and on the return of Asbury with only two of the names of the promised parties to it, Smith went out to get his aunt's signature to it, and shortly thereafter returned with the name of his aunt on the note. That thereupon defendant took the note over to plaintiff's office, and on being asked by him, "How will you have the check made, to you, or to Smith?" replied, "It don't make any difference; you had just as well make it to me, and I will settle with Smith," etc.

Upon the attention of defendant, however, being called to the first part of his testimony, he said, by way of correction: "I first asked him, 'Mr. Huston, have you got $2,500 to loan?' He said he had. I told him that Tom Smith wanted to borrow that amount, and said that he would give as security on his note, his aunt Jane Smith, Patrick Curtin and Philip Weckerlin."

In this statement defendant is fully supported as to the language he stated he used by Miss Maggie Quinliven, who testified that defendant went to the telephone, called up Mr. Huston, and asked him if he had $2,500 to loan, and then he said: "Tom Smith wants to borrow that amount, and says he will give as security his aunt, Mrs. Jane E. Smith, Patrick Curtin and Philip Weckerlin;" then he says, "I think the note is perfectly good, Mr. Huston, but you had better investigate for yourself."

It further appeared in evidence that defendant, on receipt of the check, took out $150 for his commission, and turned over, by check, the residue to Tom Smith.

The foregoing is a sufficient statement of the evidence for the purposes of the present occasion. On the conclusion of the testimony, the court gave the jury a peremptory instruction to find for plaintiff the amount of the note with interest at six per cent from its date, and a verdict in accordance with this instruction was returned.

1.   Chitty says:   "An inducement in an action of assumpsit is in the nature of a preamble, stating the circumstances under which the contract was made, or to which the consideration has reference."   1 Chitty, Pl. [16 Am. Ed.] *296; *Ibid*, *111, *et seq.;* Bliss, Code Pl. [3 Ed.], secs. 149, 150; Andrews Stephen's Pl., sec. 53; 5 Am. and Eng. Ency. of Law, 355.   Under these authorities it will readily be seen that the "matter of inducement" in this instance begins at the initial statement as quoted from the petition, and ends at the asterisk as marked after the word "aforesaid."   The "gist" of the action manifestly lies in the allegation that defendant undertook and agreed to procure and deliver to plaintiff a promissory note of certain named parties, for the sum of $2,500.   Were this an action at common law it would be denominated *"express assump-*

*sit.*" 1 Wait's Act. and Def. 373. And notwithstanding the common law forms have been abolished, their substance in great part remains, and this is still true of the distinction between mere matter of inducement and the "gist" of the action or matter of substance. Bliss, Code Pl., sec. 149.

So that from these considerations it must be evident that plaintiff's contention that "the petition in this case is *not based* upon an agreement by Tyler to procure a note signed by the parties named," and that "the agreement is set out by way of inducement in connection with all the other facts connected with the transaction," can not prevail. And even if it be conceded that the words from the asterisk downwards, constitute only matter of inducement, still plaintiff is in no better plight, because the allegation is certainly material to plaintiff's recovery; and on this point Chitty says: "In general, however, every allegation in any inducement, which is material and not impertinent and foreign to the cause, and which consequently can not be rejected as surplusage, must be proved as alleged, and a variance would be fatal." 1 Chitty, Pl. *299.

We regard, however, the allegation already noted, not as mere matter of inducement, but as the *gravamen* of plaintiff's action, and without proof of it, and there was none, he was not entitled to recover in this case.

2. Plaintiff having elected to sue on an alleged express contract on the part of defendant to procure and deliver to plaintiff a promissory note for $2,500, etc., can not enlarge his cause and basis of action by resorting to the general words of his petition, but will be confined to the act specifically assigned in his petition as his ground of action. *Schneider v. Railroad,* 75 Mo. 295; *Waldhier v. Railroad,* 71 Mo. 514; *Fuchs v. City,* 34 S. W. Rep. *loc. cit.* 513. And plaintiff having declared upon what is an express contract or warranty

as to the genuineness of certain signatures, he was thereby precluded from relying on an implied warranty to the same effect. *International Co. v. Smith*, 17 Mo. App. 264; *Deming v. Foster*, 42 N. H. 175; *McGraw v. Fletcher*, 35 Mich. 104; *Baldwin v. Van Deusen*, 37 N. Y. 487.

Nothing is better settled in this State than that a party will not be permitted to sue upon one cause of action and recover upon another. *Clements v. Yeates*, 69 Mo. 623, and cases cited; *Carson v. Cummings, Ib.* 325; *Sumner v. Rogers*, 90 Mo. 324. In the last case cited, it was ruled that though our code speaks of every suit brought thereunder as a "civil action," yet this extends only to the *form* of the action, and not to its *substance*. On a subsequent occasion it was ascertained that the same view had been expressed in a more amplified way by the court of appeals of New York, to the effect that notwithstanding a party may move to have the pleading of his adversary made more definite and certain, yet he is not bound to do this; that is the primary duty of the party drawing the pleading, and the latter can not cast that *onus* on his opponent by failing to perform his own duty in the first instance, and that duty consists in expressing his meaning clearly and unmistakably. *Snyder v. Free*, 114 Mo. 360; *Clark v. Dillon*, 97 N. Y. 370. See, also, *Young v. Schofield*, 34 S. W. Rep. *loc cit.* 499.

In short, the cases above cited recognize the doctrine that the "*fundamental requirements*" of good pleading are and must remain the same, whether under code or at common law; that is to say, a pleading must be so drawn as to tender a definite issue or issues, and not have the adversary to grope in the dark as to what the meaning of the pleading is; "this is no more allowable now than formerly." *Clark v. Dillon, supra.* In the case at bar, therefore, it was misleading in pleading

plaintiff's cause of action to plead an express contract, and then on the trial rely upon that as a matter of inducement, and also on "all the other facts connected with the transaction," whether such other facts accorded with the theory of an express contract or warranty or not.

3. The testimony of defendant as corrected by him, supported as it is by that of Miss Quinliven, doubtless establishes that defendant was acting only as the agent of Tom Smith, and this was communicated by him to plaintiff. If so, then under all the authorities he can not be held liable for subsequent occurrences. *Whitney v. Wyman*, 101 U. S. 392; Mechem, Agency, sec. 555, and cases cited; *Bank v. Gallaudet*, 120 N. Y. 298; *Worthington v. Cowles*, 112 Mass. 30. In these circumstances, there being a conflict to some extent in the testimony, it should have been left to the jury to say whether the agency of defendant in the transaction had been made known by defendant to plaintiff.

But it seems the authorities do not go so far as to require a *direct* making known of the fact of the agency, etc., for in treating of this topic, it is said in a recent work of acknowledged merit, already cited: "It is material in these cases that the party complaining of a want of authority in the agent should be ignorant of the truth touching the agency. If he has full knowledge of the facts, or of such facts as are sufficient to put him upon inquiry, and he fails to avail himself of such knowledge or of the means of knowledge reasonably accessible to him, he can not say that he was misled simply on the ground that the other assumed to act as agent without authority." Mechem, Agency, sec. 546, and cases cited; Wharton on Agency, sec. 531.

Now, in this case, among the concessions made during the trial by plaintiff when testifying, was this: "*I supposed he* [Tyler] *was getting it* [the money] *for the*

*parties whose names were on the note; I did not suppose he was getting it for himself."* So that under the authorities just cited, even on plaintiff's own showing, it should have been left to the jury to say whether there was such knowledge on the part of plaintiff of the facts attendant on the transaction, or of such facts as were sufficient to put him on inquiry, and he failed to avail himself of such facts as were either actually or else potentially known to him. Indeed, it would seem that the bare presentation of the note to plaintiff by defendant, without indorsement, would be sufficient to put plaintiff on inquiry as to whether defendant was the seller of the note or acting as the agent of the principal therein. And certainly the means of knowledge as to these were "reasonably accessible" to plaintiff, for a bare inquiry would no doubt have elicited from defendant in just what capacity he was acting.

4. There are cases where, if a broker *sells* a negotiable promissory note, and transfers it without indorsement and by delivery, without disclosure of his principal he becomes liable as principal to those with whom he deals, and will be held to an implied warranty not only of his authority to sell it, but also that the signatures of all prior parties to it are genuine. Mechem, Agency, sec. 929, citing, *Thompson v. Mc-Cullough*, 31 Mo. 224, and other cases. But in this case there is no charge made that defendant was the seller of the note, and if he was, and disclosed his agency, etc., he would not impliedly warrant the genuineness or value of the paper which he transferred by delivery. Tiedeman, Com. Paper, sec. 245.

5. In addition to the reasons above given, showing that error occurred during the trial of the case at bar, may be instanced the fact that the trial court gave a peremptory instruction to the jury to find for plaintiff. Such an instruction would have been erron-

eous even had there been no conflict in the testimony.
This has been the uniform rule in this State since
*Bryan v. Wear*, 4 Mo. 106. *Vaulx v. Campbell*, 8 Mo.
224; *Gregory v. Chambers*, 78 Mo. 294; *Wolff v. Camp-
bell*, 110 Mo. 114. And the reason given in the first
mentioned case was that such an instruction in effect
told the jury "they must believe the evidence." Of
course where, as here, there is conflicting evidence,
the error of such an instruction on part of plaintiff
becomes of·more pronounced proportions.

Because of the errors mentioned, we reverse the
judgment and remand the cause. All concur.

ON REHEARING.

GANTT, P. J.—This cause has been reheard. On
the former hearing it was reversed and remanded.
The opinion by SHERWOOD, J., is reported herewith.
As that opinion accompanies this expression of our
views upon the rehearing, reference is here made
thereto for a statement of the pleadings and evi-
dence.

The question is, did the court below err in giving
a peremptory instruction for plaintiff; or stated some-
what differently, was there not substantial evidence on
the part of the defendant to establish his defense?

The plaintiff's case is bottomed upon an alleged
specific contract upon defendant's part to procure and
deliver to plaintiff the note of Thomas Smith, Pat
Curtin, Philip Weckerlin, and Jane E. Smith for
$2,500, and the defense was and is that defendant, as
the agent only of Thomas Smith and for and in behalf
of said Smith, applied to plaintiff for the loan of said
sum of money fully informing plaintiff who his princi-
pal was and that said Smith proposed the names of
Pat Curtin, Philip Weckerlin, and Jane E. Smith as

his sureties; that plaintiff having consented to take
said note and loan said sum, defendant informed said
Smith and received said note from him to be delivered
to plaintiff and that as such agent for said Smith alone
he delivered said note and received said money, believ-
ing the signatures thereto were genuine.  If the evi-
dence tended to show that defendant was the agent of
Smith alone to procure the money for him and he dis-
closed his agency to plaintiff and was ignorant of the
forgery of the names of the sureties and acted in good
faith, then the law is settled that he can not be held
for the acts of his principal.  "When the principal is
disclosed and the agent is known to be acting as such,
the latter can not be made personally liable." *Whitney
v. Wyman*, 101 U. S. 392; *Worthington v. Cowles*, 112
Mass. 30; *Huston v. Tyler*, 36 S. W. Rep. 654.

Recurring then again to the evidence the plaintiff
testified:  "I did not suppose he [Tyler] was getting
it [the money] for himself."  The defendant testified:
"I told him [Huston] that Tom Smith wanted to bor-
row the money—twenty-five hundred dollars—that
amount—and said that he would give as security on
his note his aunt, Jane Smith, Patrick Curtin and
Philip Weckerlin."  Miss Quinliven testified she heard
defendant talking to plaintiff over the telephone.  "He
[defendant] said Tom Smith wants to borrow that
amount—$2,500—and says he will give as security his
aunt, Jane Smith, Patrick Curtin, and Philip Wecker-
lin."  It was admitted defendant was ignorant of the
forgery of the names of the sureties and acted in entire
good faith.  Now if the jury believe defendant and
Miss Quinliven, as it was their province to do, the
defendant had established his defense.  No question of
deceit or fraud could arise upon the issue tendered by
the pleadings, and the admission that defendant Tyler
in the whole transaction acted in the utmost good

faith and in absolute ignorance of the fact that the names of the signatures of the sureties on the note had been forged, would have wholly disproved such an allegation. *Hamlin v. Abell*, 120 Mo. 188, is relied upon as in conflict with the opinion of this court on the first hearing, but the most casual reading of that case will show that the defendant in that case insisted that the circular describing certain notes, and his letter, remitting them to the purchaser, disclosed that he was merely the agent of the bank for whom he was selling them, but upon inspection of those papers we held otherwise and that the business of a broker did not necessarily raise an inference that he was not the owner of paper which he offered to sell. In that opinion we said: "If an agent would bind only his principal it is his duty to disclose him. It is in his power always to do this, and when he fails to do so it must be taken that he intends to bind himself." So we still say. We simply held in that case on this point that there was nothing whatever to disclose that the defendant was an agent of any other person. As above indicated there was much evidence in this case to show that Col. Huston was apprised that defendant represented only Thomas Smith in procuring the money. As to the other point in that case that even if defendant was an agent of Smith in these transactions, he can and ought to be held for fraudulent representation of the genuineness of the signatures of the sureties, we think it is too clear for argument under the solemn admission in this record that Tyler was ignorant of the forgeries and acted in perfect good faith, and upon the pleadings which only state a cause of action *ex contractu*, that such a contention can not be sustained.

Upon a careful review of the argument upon the rehearing we adhere to our original opinion that the

circuit court erred in giving the peremptory instruction for plaintiff and that the evidence entitled defendant to a decision by the jury. Accordingly the judgment is reversed and cause remanded for new trial. SHERWOOD and BURGESS, JJ., concur.