THE GREENVILLE LUMBER COMPANY, Appellant, v. THE NATIONAL PRESSED BRICK COMPANY, Respondent.

St. Louis Court of Appeals, October 20, 1908.

SALES: Assumpsit: Agency: Fraud. In an action in assumpsit for the value of several carloads of brick, where it was shown that the defendant ordered the brick from a third person, that the brick was shipped by the plaintiff and that the defendant paid the third person who obtained possession of the bills of lading by permission of the plaintiff, in the absence of fraud or collusion betwen the defendant and the third person, and in the absence of evidence to show that such third person was defendant's agent, the defendant was not liable.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

AFFIRMED.

*John B. Denvir, Jr.,* for appellant.

The court erred in taking the case from the jury at the close of all evidence. Woods v. Insurance Co., 50 Mo. 112; Smith v. Hutchinson, 83 Mo. 691; Gross v. Tower, 85 Mo. 251; Ayers v. Railroad, 190 Mo. 236; Boone v. Railroad, 20 Mo. App. 232; Hirsch v. U. S. C. B. A., 78 Mo. App. 361; 6 Enc. Pleading and Practice, page 453.

*E. N. Robinson* for respondent.

The court did not err in taking the case from the jury. The plaintiff failed to make out a prima-facie case and the demurrer was properly given. Carson v. Cummings, 69 Mo. 325; Huston v. Tyler, 140 Mo. 253; Debaun v. Atchison, 14 Mo. 543; Bircher v. Boemler, 204 Mo. 563; Rice v. Groffmann, 56 Mo. 434; Scharf v. Meyer, 133 Mo. 429; Price v. Railway Co., 40 Mo. App. 194; Hesse v. Protective Assn., 72 Mo. App. 598.

GOODE, J.—Plaintiff, a corporation, engaged in business in Greenville, Illinois, began this action to recover $696.53, the purchase price of eight carloads of brick alleged to have been sold and delivered to defendant at different dates from January 12th to January 24, 1907. The petition is in the form of assumpsit for goods sold and delivered, and avers plaintiff, at the special instance and request of defendant, sold and delivered to defendant certain goods and merchandise of the value aforesaid, the items of which and the dates when they were sold would appear from a bill of items annexed to the petition. It is also averred the prices charged were reasonable and defendant promised and agreed to pay the total amount, but afterwards refused to pay. Defendant does business in St. Louis. Charles W. Irwin, secretary of the defendant company, had negotiated with O. E. Davidson, manager of the Greenville Lumber Company, in December, 1906, for the purchase of some brick, and a dispute arose between the two companies out of the negotiation. Irwin claimed plaintiff sold brick to the National Pressed Brick Company at that time, but Davidson denied there was a positive agreement to sell and said the brick was not to be shipped unless a reduction in freight rates could be procured. This affair between the parties has only an incidental bearing on the case at bar. Davidson swore the bill for the purchase price of the bricks in controversy was not mailed to defendant until February 15, 1907, although the carloads of brick were delivered at different times in January and it was the custom of plaintiff to mail bills with the cars, because, in the December talk with Irwin, the latter had said defendant paid for all brick it bought about the middle of the month after delivery. About the time of said negotiation between Irwin and Davidson, Henry Scherf of St. Louis, who is designated as a "brick broker," took an option to expire February 15, 1907, to purchase the entire factory or plant of the Greenville Com-

pany, but never closed the deal. Davidson testified it was part of the arrangement with Scherf that the price of whatever brick plaintiff sold during the life of the option should be credited on the contract price Scherf was to pay for the whole property. After Scherf had acquired the option he made a contract with defendant to sell it five hundred thousand brick at $6.25 a thousand. The written order for these bricks was given by defendant under date of January 14, 1907, in this letter addressed to Scherf:

"January 14, 1907.
"Mr. Henry Scherf,

"602 Roe Building, City.

"Dear Sir: You may enter our order for 500,000 Strictly Hard and Red brick, to be 1-3 Face and 2-3 Backing up, price to be $6.25 per M less 25 f. o. b. cars, East St. Louis, with freight prepaid to East St. Louis.

"It is understood that 200,000 will be shipped immediately as we direct, and the additional 300,000 to be shipped on our order in three (3) or four (4) weeks. It is agreed and understood that any shipping instructions that we may give you on this business will not be interfered with in any way by you or your company. Payment is to be made upon receipt of bill of lading and your count to be verified by us.

"Yours very truly,
"NATIONAL PRESSED BRICK CO.
"Accepted by Henry Scherf.    By. C. W. IRWIN, Secy."

Irwin swore the arrangement for the purchase of the brick from Scherf was made verbally a few days before the letter was written, thus explaining how it happened the first carload of brick was delivered January 12th, or two days before the date of the letter. Scherf arranged with plaintiff to furnish the brick, as stated, and they were shipped in eight carloads. Plaintiff contends it sold them to defendant; whereas defendant con-

tends it bought them from Scherf, paid him in full and had nothing to do with plaintiff in the transaction. The bills of lading for two of the cars were issued in the name of H. Scherf; that is to say, the railroad company receipted him for the cars; but the other six bills of lading named plaintiff as the consignor. All the cars were consigned to the National Pressed Brick Company at East St. Louis. The eight bills of lading were turned over to Scherf as issued and were in his possession when the brick reached destination. He collected the price of every car from defendant, as the evidence conclusively shows. In explanation of Scherf's possession of the bills of lading, Davidson swore he (Scherf) induced plaintiff to turn them over to him by representing that the movements of cars at East St. Louis often were delayed by the railroad companies and he needed the bills of lading in order to expedite the carriage of the cars in question from there across the river. The court refused to direct a verdict in favor of defendant on the testimony of plaintiff; but gave the direction when all the evidence was in. Whereupon plaintiff took a nonsuit with leave to move to have it set aside; and this having been done and the motion overruled, an appeal was allowed.

We can think of no theory on which defendant would be liable for the price of the brick unless Scherf was its agent in the purchase and plaintiff sold to him as agent, or he and defendant colluded to defraud plaintiff. The testimony of Davidson goes to show he dealt with Scherf as agent for defendant; but no proof of such an agency was introduced, and all the evidence tends to disprove it. The only trace of testimony of any kind to show the transaction was a sale by plaintiff to defendant, was Davidson's statement that it was agreed between plaintiff and Scherf that while Scherf's option was in force, all sales were to be made to customers by plaintiff and Scherf given credit for the amount of them on what he was to pay. There is no proof defendant

knew of this understanding, and Davidson admitted on the stand Scherf might have deceived defendant regarding the arrangement between him and plaintiff. Of course if there was collusion between Scherf and defendant, the latter would be liable; but collusion and fraud were neither pleaded nor proved. The action is in assumpsit, and the gravamen of the petition is the averment that plaintiff sold the brick to defendant at the latter's special instance and request; an averment wholly unsupported by testimony or circumstance. Plaintiff points to the receipt of one carload of brick by defendant prior to the date of its written order to Scherf. It is argued this fact shows defendant's contract with Scherf was subsequent to the sale by plaintiff to Scherf and tends to prove Scherf acted for defendant. Such reasoning is forced. It would not be fair to conclude Scherf and defendant were in collusion and the letter was written as part of a fraudulent scheme, even if the circumstance had not been explained, and it was. There was a total failure to prove the promise laid in the petition and the court did right to sustain the demurrer to the evidence. [Houston v. Tyler, 140 Mo. 252, 36 S. W. 654, 41 S. W. 795; Carson v. Cummings, 69 Mo. 325.] Scherf probably committed a fraud in not paying plaintiff for the brick he bought and may have intended to defraud all the time. Be that as it may, defendant had the right to pay him for the brick it had ordered from him, especially as he had obtained possession of the bills of lading by the act of plaintiff company. [Scharff v. Meyer, 133 Mo. 429, 34 S. W. 858.]

The judgment is affirmed. All concur.