JOHN FRANK MERRYMAN, Appellant, v. WILLIAM A. BUDDECKE.

Division One, May 31, 1912.

PLEADING: Variance: Failure of Proof: Sec. 2021, R. S. 1909. Evidence of a promise to let one into the reorganization of a public utility enterprise on such terms that he would receive stock and bonds sufficient to make him whole on account of his investment in the original undertaking, does not sustain an allegation in the petition of a promise to pay a certain sum of money, and it is such a variance as to constitute a failure of proof within the meaning of Sec. 2021, R. S. 1909.

Appeal from St. Louis City Circuit Court.—*Hon. R. M. Foster* and *Hon. Virgil Rule,* Judges.

AFFIRMED.

*Charles P. Johnson, Franklin Miller* and *Harlan, Jeffries & Wagner* for appellant.

(1) We have seen that the record in this cause was written up, that the evidence of plaintiff was printed, and that the record and the printed statement were before the court and the respective counsel, and

that nine months elapsed, from the submission of the cause, before the rendition of the judgment, without a single objection being made as to variance or failure of proof; that a motion for new trial was filed in which are set forth eight assignments of error, but in no assignment is it charged that the court erred because the proof presented did not sustain the cause of action pleaded. Mellor v. Railroad, 105 Mo. 466; Litton v. Railroad, 111 Mo. App. 150. Applying the principles in the cases, supra, to the case at bar, we find that the gravamen, as Judge THOMAS calls it, or the gist of the cause of action, as Judge GOODE calls it, was the contract between the plaintiff and the defendant; the defendant denying that he ever made any contract with the plaintiff, hence the mode of payment under the contract, or the damages for the breach of the contract, did not constitute the cause of action, they were simply collateral to it. Conceding that there was a defect in the petition, the defendant evidently did not regard the defect as prejudicial to his defense, as defendant remained silent when evidence was being offered as to mode of payment under the contract and after verdict assigned no error of court in the admission of evidence, as to the mode in which payment was to be made under the contract. We therefore conclude that if there was a defect in the petition, which we concede only for the sake of argument, that it was waived by the failure of the defendant to object to the evidence and to except to it if allowed by the court over his objection. (2) There was neither a variance nor a failure of proof. The conversation, of which plaintiff speaks, occurred between plaintiff and defendant when it was not contemplated that cash should be paid to any one. After the first trip of plaintiff and defendant to Las Vegas, when the conversation took place, the defendant in his letter and interviews always promised cash, hence there was no variance, the defendant desiring to amend the proposi-

tion of Call, Duncan, Sanders and Epperson, from a bond proposition to a cash proposition, and to pay plaintiff every cent plaintiff had in it, the defendant to finance the road and run it himself.   (3)   It will be observed that the appellant's petition simply charges that "for cash advanced and invested and for said services rendered, defendant promised to pay to plaintiff," etc.   The petition does not charge how the appellant was to be paid—whether in property or in money.   4 Cyc. 330; Laidler v. State, 2 Harr. & Gill, 277; Lyles v. Lyles, 6 Harr. & Johns. 273; Stewart v. Craig, 3 Greene (Ia.) 505; Kent v. Bowker, 38 Vt. 148; Russell v. Branham, 8 Blackf. 277; Dock Co. v. Soulard, 8 Mo. 666.

*Nagel & Kirby* for respondent.

(1)   The action of the trial court in sustaining respondent's motion for a new trial for the reason that the proofs presented did not sustain the cause of action pleaded, was proper, because there was a total failure of proof within the meaning of section 2021, Revised Statutes 1909.   The allegations of the cause of action pleaded, towards which appellant's proof was directed, remained unproved in their entire scope and meaning.   The gist of the pleaded cause of action, alleged by way of inducement as well as by a formal statement of the contract proper, consisted of an undertaking by appellant to transfer and deliver to respondent, for a cash consideration, not only his own bonds and shares of stock, but also an option which the petition alleges that appellant held on the shares of stock of his associates, giving him the right to buy their stock for less than par, and which options he had acquired for the purpose of effecting a reorganization of the company.   The allegations of aid and assistance were mere incidents to the principal subject-matter of the alleged contract.   There was a total

failure of proof because: (a) The undertaking of the other stockholders being unilateral—without consideration and revocable at will, and relating to the exchange of their holdings for bonds in another company, did not constitute options for the purchase of their stock, whether "black on white" or otherwise. An option is a contract by which the owner of property agrees with another person that he shall have the right to buy the property at a fixed price within a certain time. 21 Am. & Eng. Ency. Law (2 Ed.), p. 924. To constitute a valid option contract, it must be founded on a consideration deemed sufficient and adequate at law, and in its creation must comply with the laws' demands, such as the Statute of Frauds, if applicable. 21 Am. & Eng. Ency. Law (2 Ed.), p. 927. (b) Having no options for the purchase of their stock, there could be no delivery thereof as charged and there was none. (c) Appellant at no time intended to deliver his own stocks and bonds, and he admits it. (d) His remuneration was not to be in cash as alleged, but in the stocks and bonds of a new company. (2) Whatever abstract merit there may be in the contention that appellant had certain advantages and opportunities in the reorganization of the company which he had placed at the disposal of respondent, there can be no recovery on that theory in this case, because a plaintiff cannot come into court, pleading a particular, express contract, and claiming a breach thereof, and recover upon proof of a different cause of action. That he must stand or fall upon the cause of action pleaded, is axiomatic. Ingwersen v. Railroad, 205 Mo. 328; Bircher v. Boemler, 204 Mo. 554; Koons v. Car Co., 203 Mo. 227; Construction Co. v. Iron Works, 169 Mo. 137; Huston v. Tyler, 140 Mo. 252; Ringer v. Holtzclaw, 112 Mo. 519; Haynes v. Trenton, 108 Mo. 123; Carson v. Cummings, 69 Mo. 325; Clements v. Yates, 69 Mo. 623; Contracting Co. v. Wrecking Co., 137 Mo. App. 392; Barber v. Imp

Co., 131 Mo. App. 717. (3) The time to raise the question is at the close of plaintiff's case, or at the close of the entire case. However inadequate the plaintiff's proof during the progress of the trial may be, it is not until the close of his case or the entire case that the court can properly determine whether his proof entitles him to a recovery. An instruction in the nature of a demurrer to the evidence is one of the modes of procedure by which the question is raised, and the request for an instruction, if a jury case, or a declaration of law, if tried by the court, is another.

BROWN, C.—The petition, after stating that the plaintiff is an attorney-at-law practicing in the city of St. Louis and elsewhere, proceeds as follows:

"That the Las Vegas and Hot Springs Electric Railway, Light and Power Company is a corporation organized and existing under the laws of the Territory of New Mexico, and was, in December, 1904, engaged in operating a street railroad in the city of Las Vegas, Territory of New Mexico, with a branch line to Hot Springs in said Territory, using electricity for motive power;

"That plaintiff was the owner of three hundred and ninety-three shares of the capital stock of said corporation, said stock being of the par value of one hundred dollars per share; that he was the owner of sixty-four five per cent first mortgage gold bonds issued by said corporation, of the par value of five hundred dollars each; that in addition to the stocks and bonds so owned by plaintiff, he had an option from other holders and owners of the stock of said corporation, giving him the right to purchase at less than the par value thereof a sufficient amount of the capital stock of said corporation to give plaintiff control of more than seventeen hundred shares, out of a total of two thousand shares of stock issued by said

corporation; that plaintiff had acquired said options for the purpose of, and was engaged in, working out a plan for the reorganization of said corporation; that in December, 1904, as aforesaid, plaintiff communicated his plan for reorganizing said corporation to defendant; that defendant expressed a desire to become interested with plaintiff in effecting such reorganization, and to that end plaintiff and defendant proceeded to the city of Las Vegas, Territory of New Mexico, and made a careful examination of the properties and business possibilities of said corporation; that after said examination, defendant being satisfied with the merit and possibilities of the business of said corporation, requested plaintiff to discontinue negotiations he was then conducting with other persons, to effect a reorganization of said corporation, and proposed to plaintiff that he (plaintiff) let him (defendant) proceed with said reorganization, and then and there agreed with plaintiff that if he (plaintiff) would turn over to him (defendant) the said options held by plaintiff for the purchase and control of the stock of other stockholders, and permit defendant to direct, manage and control the said reorganization, and give to him (defendant) aid in effecting said reorganization, and upon the payment of the sums hereinafter set out, deliver to defendant all of his (plaintiff's) stock and bonds in said corporation; that he (defendant) would, in consideration of said options, rights, privileges, advantages, aid and property, pay to plaintiff a sufficient amount to reimburse plaintiff for all expenditures made by plaintiff for or on account of the said Las Vegas and Hot Springs Electric Railway, Light & Power Company, whether in the promotion and construction thereof or otherwise, together with his investment in the stock and bonds of said corporation, and in addition thereto, pay to plaintiff an amount equal to the reasonable value of his services performed in his professional capacity in the organization of

said Railway, Light & Power Company, and as its general counsel; that as a part of said plan of reorganization, it was proposed by defendant, and agreed to by plaintiff, that a new corporation be organized to take over the property, rights and franchises of the said Railway, Light & Power Company, and, in addition to the above-mentioned considerations, it was agreed by defendant that plaintiff should become general counsel for said proposed corporation, and receive for his services the reasonable value thereof, and defendant promised to make plaintiff whole and fully reimburse him for all expenditures, investments and services rendered for, in and about the said Railway, Light & Power Company; that plaintiff did discontinue negotiations with other persons, did turn over to defendant his options and place defendant in full management and control of said reorganization, and did then, and has at all times, aided and held himself in readiness to aid defendant in perfecting said reorganization; that defendant has now, by the aid so given and the advantages afforded him by the plaintiff, perfected said reorganization, and in pursuance thereof has organized, under the laws of New Mexico, a new corporation, known as Las Vegas Railway & Power Company, which said last-named corporation has acquired the property, rights and franchises of the Las Vegas & Hot Springs Electric Railway, Light & Power Company; that plaintiff expended for and on behalf of, and invested in the stock and bonds of, the said Las Vegas and Hot Springs Electric Railway, Light & Power Company, the sum of twenty-eight thousand, five hundred dollars, in cash; that plaintiff in his professional capacity, organized said corporation, procured its franchises, obtained for it valuable leases, and served as its general counsel for a period of four years, for which services he received no compensation; that the reasonable value of said services is twenty thousand dollars ($20,000); which said cash

advanced and invested, and for said services rendered, defendant promised to pay to plaintiff; that plaintiff has fully performed his part of the contract with defendant, but the defendant, though requested to perform his contract, wholly disregarding his duty in the premises, has failed, refused and neglected, and still fails, refuses and neglects, to perform said contract or any part thereof, and that no part of said indebtedness has been paid.

"Wherefore, plaintiffs prays judgment against the defendant in the sum of forty-eight thousand, five-hundred dollars ($48,500), together with interest and costs."

The answer is a general denial.

The cause was tried at the October term, 1907, Division No. 3, of the St. Louis Circuit Court and was submitted to the court for trial without the intervention of a jury.

The plaintiff was sworn as a witness in his own behalf and testified that the Las Vegas and Hot Springs Electric Railway, Light & Power Company, had an outstanding capital represented by 2000 shares of stock of the par value of $100 each, and 348 bonds each of the par value of $500. That he owned in December, 1904, 393 shares of the stock and 64 of the bonds, the most of which were pledged as collateral. The other principal stockholders were F. M. Call 412 shares, A. H. Duncan 413 shares, E. L. Epperson 399 shares and V. O. Saunders 200 shares. Duncan and Call also held ninety other shares.

The corporation had a street car line in Las Vegas and East Las Vegas, two towns containing about 4000 inhabitants each, situated upon opposite sides of the Gallinas river, and from these it had operated its road upon a track leased from the Atchison, Topeka & Santa Fe Railroad Company, to Hot Springs, about eight miles, and still further up a mountainous canyon was the Montezuma Hotel. A short time before De-

cember, 1904, there had been a flood in the Gallinas river which had washed out 3000 feet of track and two bridges, and lightning had struck the power house, placing it in a "frightful condition." The plant was shut down, and money was needed. The owners did not have it or would not put it in, so that it was important to procure it upon the security of the property.

A few days before Christmas, 1904, plaintiff and defendant met on other business at the latter's office in St. Louis, and after transacting it plaintiff told defendant that he had been informed that his wife was afflicted with tuberculosis, and had been compelled to leave St. Louis on that account and was then at Colorado Springs. Defendant said he was going to sell out his interests and move West. Plaintiff said that he had just been in New York on business, connected with Las Vegas property, that it was a good thing, that Las Vegas was said to be one of the best points in the world for persons having tuberculosis, and would be good for the health of defendant's family. They met again about January first, and plaintiff told defendant about his connection with the Las Vegas enterprise and that he had then a proposition before his New York people and that the company had had a meeting in November and had agreed that if plaintiff could get anyone to put fresh money into it, all the stockholders and directors would surrender their bonds and stock, amounting to about $200,000 of stock and $174,000 of bonds and accept $75,000 in new bonds for their holdings. He also told defendant that the New York people had been considering the proposition, and he was trying to get $100,000 from them to put into it. That the New York people would take in the plaintiff and pay him back the money he had in it and for his services during the four years he had worked for it.

Defendant asked that the matter be left open for thirty days until he could go to Las Vegas, and if he

went into it he would do better by plaintiff than the New York people. In all plaintiff's interviews with defendant plaintiff mentioned that he and his partners, already named, held the stock and had built the road.

Defendant finally said to plaintiff he would not give the gentlemen $75,000 "for this wreck here. I can furnish it myself. What I want to do is to get it down to the lowest possible amount." Plaintiff said he couldn't do it; that he had got them into it, and couldn't go to them and ask them to reduce their holdings. Defendant said: "You step aside. I will trade with them." Plaintiff said: "All right, they are of age, when it comes to that." Defendant said: "I will take care of you, all you have put into it." Plaintiff said: "Yes, not only money I have put into it, but I have been working for it for years. I have given four years, the best years of my life to it." Defendant answered: "You will get all that back, and more too." Plaintiff in his testimony stated: "It was never contemplated that I would get cash, I will say that. I was to take an equivalent in bonds and stock in his new company; all what money I had put into it and what my services were reasonably worth for four years, that I was to get back in stocks and bonds of the company he was to organize; that was the agreement with him, he would see that I would get all my money back. He said he would give me back in bonds and stock of his new company, to the amount and extent of what moneys I had put into it and my four years of time; whatever that was worth, he would give me back in bonds and stock of the new company. He said whatever money I put into this road and whatever my time was worth, he would give me an equivalent of that in stocks and bonds of his new company. That was the basis of it."

Defendant got the stock and bonds from plaintiff's associates at the best price he could and reorganized

the enterprise. He offered plaintiff eight thousand dollars in cash and five thousand dollars in bonds on which he would guarantee a permanent dividend of six per cent. This was refused.

The plaintiff proved that at the time he took up the matter with defendant he had put cash into the enterprise to the amount of $28,500, and that the value of his services to the old company had been at least $15,000.

The defendant asked a declaration of law in the nature of a demurrer to the evidence, which was refused, and the court found for the plaintiff in the amount of $43,500. The motion for a new trial was filed assigning the refusal of this instruction, among other things, as ground therefor.

This motion was sustained, and the finding set aside, and a new trial granted on the ground stated upon the record as follows:

"Defendant's motion for new trial is sustained, because the proof presented does not sustain the cause of action pleaded."

The substance of the cause of action stated in the petition is, that plaintiff had 393 shares of the capital stock and sixty-four bonds of the Las Vegas Company, and had an option from other stockholders on enough of the stock to make, with his own, 1700 shares, and that the defendant agreed that if plaintiff would turn over the option to him and would permit him to direct, manage and control the reorganization of the properties, and would aid him in that work, the defendant would pay him a sum equal to the amount he had expended for the company, including the amount paid for bonds and stock and the reasonable value of his services, all of which amounted to $48,500, and that when this sum of money should be paid, the plaintiff would deliver to the defendant his own stocks and bonds.

The testimony of plaintiff at the trial was that defendant promised him if he reorganized and financed the enterprise with plaintiff's help he would see that plaintiff got an equivalent in bonds and stock in the new company of all he had put into it and the value of his services for four years.

The defendant, in his letter of March 24, 1905, expressed it as follows: ''I will also see that you are not going to be the loser in this deal, and every cent that you have in it now shall be worth a whole cent in cash, and later on perhaps more.''

The court below was evidently satisfied that evidence of a promise to let one into the reorganization of a public utility enterprise on such terms that he would receive stock and bonds sufficient to make him whole or more on account of his investment in the original undertaking did not sustain the allegation of a promise to pay a certain sum of money as set forth in the petition. We are constrained by the uniform course of this court to agree with it on this proposition and to hold that the variance constituted a failure of proof within the meaning of section 2021, R. S. 1909. [Ingwerson v. Railway, 205 Mo. 328; Koons v. St. Louis Car Co., 203 Mo. 227; Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 137; Ringer v. Holtzclaw, 112 Mo. 519; Huston v. Tyler, 140 Mo. 252.] The Ringer case was upon a contract for the sale of lots, and the evidence tended to show an agreement to assign contracts of purchase for the same lots. In the Ingwerson case, the suit was upon a special contract for the carriage of cattle from Bowling Green to Chicago within the period of twenty-four hours from the time of starting to the time of delivery, while the evidence showed a contract to carry within a reasonable time. In a thorough examination of the question it cites a great number of cases bearing upon the obvious conclusion that a plaintiff cannot sue upon one proposition and recover on another. The order of the St.

Louis Circuit Court setting aside the verdict and granting a new trial is affirmed and the cause remanded to said court, where the plaintiff may amend his petition if so advised. *Bond, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur, except *Valliant, J.,* absent.