The opinion of the court was delivered by
Brewer, J.:
This was an action in the district court of Wyandotte county, on an implied warranty of title in the sale of cattle. The case was tried before a jury; verdict and judgment were entered in favor of the plaintiffs, and to review this ruling the defendants allege error.
No question is raised upon the pleadings, none as to the instructions, and the single proposition of counsel for plaintiffs in error is, that under the law as stated by the court the testimony did not warrant the verdict. Counsel for defendants in error, plaintiffs below, in their argument before this court suggested that perhaps the district court charged the law too favorably for the defendants below. Be that as it may — and as to this we shall inquire further hereafter — it is enough for the purposes of this review to hold, that if both parties were satisfied with the law as stated by the district court, and no objections were taken by either party thereto, *645 the law as thus stated controls the present decision. (K. P. Rly. Co. v. Cutter, 19 Kas. 83; City of Wyandotte v. Noble, 8 Kas. 444.) The jury were bound to act upon it as law, and if in their verdict they disregarded it, it was the duty of the trial court, and it is now the duty of this court, to set that verdict aside. Such at least is the general rule, and the present case furnishes no exception thereto.
The facts of the case are, that both plaintiffs and defendants were commission merchants in Kansas City, Kansas, engaged in the business of handling and selling live stock; that on the 5th day of July, 1879, the defendants sold the plaintiffs seventeen head of beef cattle, at and for the price of $536.61, which was duly paid; and the vital question in the case was, whether the plaintiffs and defendants were, to the knowledge of each other, acting for themselves, or as agents for third parties. Upon this the district court charged as follows:
“ That if the jury believe, from the evidence, that the plaintiffs did not purchase said cattle themselves for themselves, but as the agents of said Clark for the latter, then they cannot recover, and you will find for the defendants. If the jury believe, from the evidence, that the defendants did not sell said cattle as their own, but sold them as the agents of said Moreland, and disclosed such agency at the sale to the plaintiffs, or if said plaintiffs then knew that said cattle were owned by said Moreland, and bought them of defendants as such agents, then you will find for the defendants.”
Upon this instruction the jury, as heretofore stated, found for the plaintiffs — that is, they found that the plaintiffs bought for themselves, and the defendants sold for themselves, or if they sold for a third party, that they did not disclose the fact that they.were acting simply as agents. Did the testimony warrant any such conclusion? We think manifestly not. Going now into the details of the testimony, it appears unquestionably that defendants sold the cattle for Wm. H. More-land, and that the plaintiffs bought the cattle for Wm. Clark; that after the cattle had been delivered to Clark, they were replevied from him by one John Stock, who, in a trial of the *646 right .of property, established his right thereto and recovered the cattle. It follows therefrom that W. H. Moreland, who brought the cattle to the Kansas City stock yards, and left them in charge of the defendants to sell, had no title. It was stated by counsel in the argument that as a matter of fact the cattle were stolen cattle, though that fact does not appear from the testimony. It is undisputed that both plaintiffs and defendants were commission merchants, dealing in live stock at Kansas City; that the defendants were not and did not claim to be the owners of the cattle; that they were left there by W. H. Moreland to sell; that they were sold by defendants on account of said W. H. Moreland, and the moneys therefrom paid over to W. H. Moreland, less their commission. There is not the first scintilla of testimony tending to show that the defendants were in fact the owners, or that they claimed to be the owners of these cattle. On the contrary, the testimony abundantly shows that plaintiffs had knowledge that the defendants were acting simply as agents. The negotiations between the parties were carried on by James H. Payne on the part of the plaintiffs, and J. N. Irwin on the part of the defendants.
At the time of the purchase this bill of sale was executed:
Account Clark.

“Kansas City Stock Yards, July 5, 1879.
Thompson, Payne & Co. bought of Irwin, Allen & Co., live-stock commission merchants, 17 cattle, 17,310, at $3.10 — $536.61.
Rec’d payment. (Signed) Irwin, Allen & Co.”
It is claimed that this bill of sale is conclusive as to the terms of the agreement between the parties, and cann.ot be explained or contradicted by any oral testimony. This is a mistake. The instrument amounts to nothing more than a receipt, or as Greenleaf calls it, “a bill for parcels,” which is always open to explanation, (1 Greenl. on Ev., § 305a; Bemis v. Becker, 1 Kas. 226;) but even upon the face of this bill of sale appears clear intimation that neither party was acting for himself, but each acting as agent for others. The purchase is stated to be on account Clark — language which to *647 say the least implies that plaintiffs were not acting for themselves, but as stated, on account of Clark. So also the purchase is from Irwin, Allen & Co., live-stock commission •merchants. This, it may be conceded, does not absolutely prove that in this particular transaction the plaintiffs were acting for themselves or as agents for others, and yet it very plainly suggests at least the latter. The expression “livestock commission merchants” may be regarded as descriptive of the general character of the business they were engaged in, and as such it is a clear intimation to any one purchasing that all their transactions, the present one included, are those •of commission merchants; or it may be considered as a description of the character in which this particular transaction alone is had, in which it is a declaration to a purchaser that these cattle they are selling they sell not as owners, but as mere commission merchants. In either way it is an intimation to the purchaser that they are not owners, but simply agents. But further, these cattle as heretofore stated were •deposited in the Kansas City stock yards. After the parties had agreed upon the price, the cattle were weighed by the weighmaster of the stock yards, and a weigh-ticket prepared •and delivered to the purchaser. The weigh-ticket reads as follows:
“Kansas City Stock Yard Company. — I., A. & Co., .account of W. H. Moreland — T. P. & Co. 17 cattle, 17,310. Taken from block 9, pen 15. Yarded in block 9, pen 15.
“Date, July 5, 1879. Buffington, Weighmaster.”
This, upon the face of it, is something more than a mere intimation, and carries a plain declaration that the cattle are .sold on account of Wm. H. Moreland. The weighmaster testified that at the time of the weighing it was announced that the sale was made on the account of W. H. Moreland. It is true on cross-examination he testifies he does not know whether Payne heard this announcement; but this signifies little, for Payne was present at the time. The announcement was made, he admits that he received the weigh-ticket, and on the back ■of it are his figures, as follows:
*648 “17,310
'3.10
536.61 (Signed) J. H. P.,”
in which from the weight and rate he figured out the price. Nor is this all: after the cattle had been weighed, before they could be taken out of the stock yards, a title-ticket had to be and was given to the purchasers. Such ticket reads as follows;
“Kansas City Stock Yards Company, delivered to Thompson, Payne & Co. account of 17 cattle, sold for account of W. H. Moreland, in block —, pen —, scales —, July 5th, 1879.
(Signed) Irwin, Allen & Co.”
Further, at the time of the weighing by the weighmaster of the stock yards, this entry was made by him in the books-of the stock-yard company:
“ Seventeen cattle, owner W. H. Moreland, sold to Thompson, Payne & Co. — 17,310 pounds. July 5th, 1879.”
Upon this testimony, uncontradicted in the slightest degree, it is clear that the purchasers knew that defendants were acting simply as agents. While James H. Payne, the member of the plaintiffs’ firm who carried on the negotiations, was a witness on the trial, he did not claim that he was ignorant of the fact that defendants were acting simply as agents; he did not deny hearing the announcement made by the weighmaster; he admitted receiving the weigh-ticket and making the memorandum on the back,1 admitted receiving the bill of sale and th’e title-ticket, and nowhere pretended to be ignorant of the fact that the defendants were simply engaged in the business of commission merchants, or claimed to have supposed that defendants were owners. In other words, the testimony offered by the defendants unmistakably showed that they were acting simply as commission merchants, and that plaintiffs knew of that fact; and there is nothing falling from the lips of the plaintffs or any of their witnesses tending in the slightest degree to impeach, contradict or limit this testimony. Hence the jury should have found that the defendants were acting simply as agents for a third party in making this sale, and that the plaintiffs knew of the fact of such agency; and *649 therefore in obedience to the instructions they should have found for the defendants.
Counsel for defendants in error, as heretofore intimated, suggest that perhaps this instruction is too favorable to the defendants; that because they are engaged in the business of commission merchants, acting generally as factors, a different rule of liability should be enforced from that applicable if they were acting as special agents in a single matter. We cannot agree with counsel in these views. Tlie fact that they hold themselves out as engaged in the agency business, carrying as it does notice to every purchaser dealing with them, that they are not selling their own goods, but the goods of others, is reason for enforcing the rule of agency strictly as to them; for if a party deals with one whom he knows to be engaged in an agency business and seeks to hold him as principal, he should see to it that he makes a clear and express contract therefor. The understanding, the implications of any ordinary transaction, are, that it is in the line of the general business of the party — that is, the agency business.
These are all the questions involved in this case, and it appearing to us that clearly upon the testimony in accordance with the instructions given by the court the verdict should have been for the defendants, it is ordered that the judgment be reversed, and the case remanded for a new trial.
All the Justices concurring.