ALEXANDER RYAN v. WM. A. TUDOR, *et al.*

1. AUTHORITY TO COLLECT—*Authorized Means.* Authority to collect implies and includes authority to use all the ordinary means for collection, and among these are the employment of counsel, and the institution of suits. Hence, when the owner of a note and mortgage placed them in the hands of an agent with instructions to collect and remit the proceeds to a given party, and the mortgagor failing to pay, the agent employed counsel and caused suit to be commenced, *held*, that his action was fully authorized.

2. DEATH, *When Presumed.* A presumption of death arises from the continued absence of a party without any intelligence from or concerning him; but in order to give rise to this presumption the unexplained absence must have continued for seven years.

3. INSTRUCTIONS—*Duty of Jury.* It is, generally speaking, the duty of a jury to accept the instructions of the court as the law of the case, and a failure to do this is ground for reversal.

*Error from Clay District Court.*

ACTION by *Ryan* against *Tudor* and wife, upon four promissory notes, amounting to $900, with interest, and to foreclose a mortgage given to secure their payment. Trial at the May Term, 1883, and judgment for defendants. *Ryan* brings the case here. The opinion states the facts.

*Anthony & Kellogg*, for plaintiff in error.

*Harkness & Godard*, for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action upon four notes and a mortgage given to secure their payment, commenced in the district court of Clay county on February 17, 1882. The mortgage was executed May 7, 1876. On the 20th of March, and before answering, the defendants filed their motion to require the plaintiff's attorneys to produce the authority under which they appeared for the plaintiff. Affidavits were read on the hearing of this motion; the court found that the attorneys had not sufficient authority, and continued the case to the next term. At the next term, for some reason not disclosed by the record, the defendants renewed the same motion, the same showing was made, and exactly the opposite ruling made by the court. Thereupon the defendants answered. The case went to trial before a jury, and during the trial an amended answer was filed, tendering two defenses: First, the death of the plaintiff prior to the commencement of the action; and second, that the action was prosecuted without authority from the payee of the notes and plaintiff in the action. These issues, involving of course no question on the merits, seemed to have been the only matters presented and considered on the trial. The jury returned a verdict for the defendants, and judgment was rendered in form that the action was prosecuted without authority, and that the plaintiff pay the costs. Upon the trial these facts appeared: In the spring of 1876, Ryan, the plaintiff, was the owner of the tract of land mortgaged. He was then fifty-two or fifty-three years of age, and unmarried. He had lived in Clay county some four or five years. He sold the land to defendants, and took the mortgage in controversy for part of the purchase-money. He left the notes and mortgage, together with some other notes, with one David Greep as his agent, with instructions to collect the moneys thereon and send them to Daniel

Fish, his brother-in-law, in New Hampshire. Some of the other notes were collected by Greep, and the proceeds forwarded to Fish as directed. Ryan, in June of that year, went to New Hampshire to visit his relatives. He stayed there two or three weeks, and then went away saying he would return in a month. Nothing has since been heard of him. He was in good health and of sound mind, but rather eccentric in his disposition. Before he left Kansas he told his agent that he did not know where he should go, that he might go to California or to the Black Hills, and that when he got settled he would write. But the agent never heard from him. The court instructed the jury that there was no testimony showing the death of the plaintiff, or raising the presumption of his death; that where notes and accounts are left with an agent, with instructions to collect, the agent has the implied power to sue and to employ attorneys to collect the debts by suit. The jury retired, and returned the verdict for defendants, as heretofore stated.

Obviously the jury disregarded the court's instructions; for that Greep had instructions to collect and remit to Daniel Fish was undisputed, and the court plainly charged the jury that authority to collect implies authority to sue and employ attorneys therefor. And in so many words the court also charged the jury that they must regard the plaintiff as still living. Now whether the court was right or not in its instructions, it was the duty of the jury to accept them as correct, and be guided by them; and upon a failure so to do the verdict should be set aside. (*Irwin v. Thompson,* 27 Kas. 643; *Howell v. Pugh,* 25 id. 96.)

Again, the court was right when it instructed that authority to collect implies and includes authority to use the means ordinarily employed for the purpose of accomplishing a collection, and that among these are the retaining of counsel and the institution of suit. Indeed, that is generally the only way in which collection can be compelled, and an agent whose duty it is to collect, has certainly the implied power to resort to the ordinary and generally the only means of

compelling collection. Authority to collect is broader and more comprehensive than authority to receive payment. (1 Wait's Actions and Defenses, p. 221, and cases cited.)

In reference to the death of Ryan, it is clear that there was no direct proof. The matter rests mainly on presumptions. The general rule in respect thereto is, that at the close of a continuous absence of seven years, during which time nothing is heard of the absent person, death will be presumed. (2 Wharton on Evidence, § 1274; 1 Greenleaf on Evidence, § 41, and cases cited.) Now at the time of the commencement of this action, only five years and eight months had elapsed since Ryan left New Hampshire, and at the time of trial seven years' absence had not fully run; so that with nothing but the mere fact of unexplained absence before it, the court was clearly right in its instructions. It is true that besides the mere fact of unexplained absence, there were one or two slight matters bearing upon this question. While a man of good health, Ryan was past middle life when he went away. He told his relatives in New Hampshire that he would be back in a month. He told his agent in Kansas that as soon as he got settled he would write. He neither returned nor wrote. Now it is doubtless true that a jury is justified in inferring death within less than seven years, where besides unexplained absence there are other matters tending to show death. In 2 Wharton's Evidence, § 1277, the author says:

"It has been incidentally observed that, independent of the general presumption of death arising from unexplained absence abroad for seven years, certain facts have been noticed by the courts as affording grounds on which inferences of death, more or less strong, may rest. Among these facts may be noticed: Presence on board a ship known to have been lost at sea, the inference of death increasing with the length of time elapsing since the shipwreck; exposure to peculiar perils, to which death will be imputed if the party has not been subsequently heard from; ignorance as to such person, after due inquiry, of all persons likely to know of him if he were alive; cessation in writing letters, and of communication with relatives, in which case the presumption rises and

falls with the domestic attachments of the party. Thus, death may be inferred by a jury from the mere fact that a party who is domestic, attentive to his duties, and with a home to which he is attached, suddenly, finally, and without explanation, disappears."

See also 1 Greenleaf, § 41, *supra; Tisdale v. Insurance Co.,* 26 Iowa, 170; same case, 28 Iowa, 12.

In the case from 26 Iowa, the court held that—

"The death of an absent person may be presumed in less than seven years from the date of the last intelligence from him, from facts and circumstances other than those showing his exposure to danger which probably resulted in his death."

And also, that—

"Evidence of character, habits, domestic relations, and the like, making the abandonment of home and family improbable, and showing a want of all those motives which can be supposed to influence men to such acts, may be sufficient to raise the presumption of death, or from which the death of one absent and unheard from, may be inferred, without regard to the duration of such absence."

So that perhaps the court ought to have left it to the jury as a question of fact, whether, considering Ryan's eccentric disposition, his lack of a family, his expressed uncertainty as to his future residence on the one hand, and on the other his age, his promise to write and return, and his long absence, his death ought, or ought not, to be inferred. Be that as it may, under the instructions as given, the jury ought not to have found as they did. As more than seven years have now passed since Ryan's departure, if no tidings have been received from him, the presumption of death unquestionably arises. But whether dead or alive, defendants' obligation to pay remains. If Ryan be alive, they should pay the money to the agent, that it may be by him remitted to Daniel Fish in accordance with Ryan's instructions. If on the other hand, Ryan be dead, an administrator should be appointed to collect this money and distribute it among his heirs. It is unnecessary that this suit be dismissed, for if an adminis-

trator be appointed, the death of Ryan can be suggested, and the suit revived in the name of such administrator.

The judgment will therefore be reversed, and the case remanded for further proceedings.

All the Justices concurring.