Thompson, Payne & Co. v. Irwin, Allen & Co.

THOMPSON, PAYNE & COMPANY, Appellants, v. IRWIN, ALLEN & COMPANY, Respondents.

Kansas City Court of Appeals, November 7, 1898.

1. **Sales**: STOLEN PROPERTY: PRINCIPAL AND AGENT. One who sells property that has been stolen will be liable to the true owner without regard to whether he acted as principal or agent.

2. ——: PRINCIPAL AND AGENT: WARRANTY. Where an agent in making a sale discloses the name of his principal to the purchaser, such purchaser should look to the principal alone for redress if the title fails, unless the agent agrees to become personally liable with the principal.

3. ——: ——: ——: DECEIT. The agent may make himself liable although he discloses the principal if he makes false and fraudulent representations as to the title with intent to cheat.

4. **Appellate Practice**: RULING IN FORMER APPEAL BINDING IN SECOND. This court uniformly holds that the rulings on the first appeal shall govern in the second, not so strictly, however, the supreme court. Held, the rulings on the former appeal in this cause left open for the jury the question of the defendants' agency in a sale of certain cattle, and an instruction taking the question of such agency from the jury, if the cattle had been stolen, does not follow the ruling of this court.

5. ——: ——: SUBSEQUENT RULING OF SUPREME COURT. If in the interval between the first and second appeal the supreme court rules on the question involved, such ruling should be followed on the second appeal; and since the former appeal in this case the supreme court in Huston v. Tyler, 140 Mo. 252, holds the question of agency in such a case is material, and that opinion must be followed on this appeal.

6. **Pleading**: AMENDMENT: INSTRUCTION: ESTOPPEL. Though plaintiffs, over defendants' objection, amended their petition so as to narrow their right of recovery, and at the trial defendants asked an instruction on that theory, defendants do not thereby waive all their other defenses.

7. **Action**: PLEADING: MONEY HAD AND RECEIVED: SUBROGATION. Where the petition counts on breach of warranty for failure of title, plaintiff can not recover as for money had and recived or on the ground of subrogation to the rights of the true owner to whom he has paid the purchase price.

*Appeal from the Jackson Circuit Court.*—HON. J. W. HENRY, Judge.

REVERSED AND REMANDED.

LATHROP, MORROW, FOX & MOORE for appellants.

(1) Defendants, in making the sale of the cattle, acted as agents for a disclosed principal, to the knowledge of the plaintiffs. They did not assert title in themselves and consequently did not impliedly warrant that they had title to the property in controversy. Irwin v. Thompson, 27 Kan. 643; Noy's Maxims, C. 42; Co. Lit., 102 a; Medma v. Stoughton, 1 Salk. 210; Pasley v. Freeman, 3 T. R. 57; Ormerod v. Huth, 14 M. & W. 664; Morley v. Attenborough, 3 Ex. 500; Eicholz v. Bannister, 17 C. B. (N. S.) 708; Benjamin on Sales, sec. 961; Hensley v. Baker, 10 Mo. 157; The Monte Allegre, 9 Wheat. 616; Blount v. Hamey, 43 Mo. App. 650; Estes v. Alexander, 90 Mo. 458; Ranney v. Meisenheimer, 61 Mo. App. 439; Scott v. Hix, 62 Am. Dec. 463; Huntingdon v. Hall, 36 Me. 501; Lackey v. Stouder, 2 Ind. 376; Long v. Hickingbottom, 28 Miss. 772; Storm v. Smith, 43 Ind. 497; McCoy v. Ortcher, 3 Barb. 323; Edick v. Crim, 10 Barb. 445; Scranton v. Clark, 39 N. Y. 220; Byrnside v. Burdette, 15 W. Va. 702; Miller v. Van Tassel, 24 Cal. 408; Jones v. Hugerford, 3 Metc. 515; Bank v. Mass. Co., 123 Mass. 330; Bank v. Kurtz, 11 W. N. 225; Ward v. Covin, 1 Head. (Tenn.) 506; Burton v. Faherty, 3 G. Green, 327; Payne v. Rodden, 4 Bibb. 304; Defreeze v. Trumper, 1 John. 274; Donaldson v. Newman, 9 Mo. App. 235; Wood v. Sheldon, 13 Vroom. 421; Schell v. Stephens, 50 Mo. 375; Parsons on Contracts, book 3, chap. 5; Hamlin v. Abell, 120 Mo. 188; Huston v. Tyler, 36 S. W. Rep.

654; s. c., 41 S. W. Rep. 795. (2) The contract of sale between plaintiffs and defendants, being made and consummated in Kansas, is to be construed by the laws of Kansas. No cause of action arose under the laws of that state and none can be enforced here. Irwin v. Thompson, 27 Kan. 643; 3 Am. and Eng. Ency. of Law, p. 552; Bishop on Contracts, sec. 1383; Elliott on Railroads, sec. 1494; Lawson on Contracts, sec. 347; Reid v. Telegraph Co., 135 Mo. 661; Otis Co. v. Railroad, 112 Mo. 622; Roach v. Type Foundry, 21 Mo. App. 118; Ins. Co. v. Simons, 52 Mo. 357; Hartman v. Railroad, 39 Mo. App. 88; Heiter v. Railway, 53 Mo. App. 331; Stix v. Matthews, 63 Mo. 368; Perlman v. Sartorius, 29 Atl. Rep. 852; McDaniel v. Railroad, 24 Iowa, 412; Hazel v. Railroad, 82 Iowa, 477; Liverpool Co. v. Ins. Co., 129 U. S. 397; Story on Conflicting Laws, sec. 242a *et seq.*; Railroad v. Cotton Mills, 7 S. E. Rep. 916; Fairchild v. Railroad, 24 Atl. Rep. 79; Ray on Negligence of Imp. Duties, Freight Carriers, p. 893. (3) The opinion of this court on the former appeal in this case is not conclusive of the questions raised upon the present appeal. Wilson v. Beckwith, 41 S. W. Rep. 985; Bird v. Sellers, 122 Mo. 32; Rutledge v. Railway, 123 Mo. 131; Buchanan v. Cole, 65 Mo. App. 495; Hamlin v. Abell, 120 Mo. 188; Huston v. Tyler, 36 S. W. Rep. 654; s. c., 41 S. W. Rep. 795; Jones v. Williams, 39 S. W. Rep. 486; Weber v. Collins, 41 S. W. Rep. 249; Railway v. Swan, 120 Mo. 30; Gwin v. Waggoner, 116 Mo. 143; Hammond v. Beeson, 112 Mo. 190; Jennings v. Todd, 118 Mo. 304; 1 Greenl. on Ev., sec. 283; Bishop on Contracts, sec. 372; Nowell v. Gaines, 68 Mo. 653; Waples v. Jones; 62 Mo. 440; Brownlee v. Arnold, 60 Mo. 79. (4) The court erred in permitting the amendment at the trial by interlining the words, "from whom they had been stolen." Scovill v. Glasner, 79

Mo. 449; Lumpkin v. Collier, 69 Mo. 170; Sims v. Field, 24 Mo. App. 557; Fields v. Maloney, 78 Mo. 172; Gibbons v. Steamboat, 40 Mo. 253; Mill Co. v. Zeitinger, 45 Mo. App. 114; Harris v. Railroad, 51 Mo. App. 125; Anniston v. Ledbetter, 9 S. Rep. 73; Freeman v. Grant, 30 N. E. Rep. 247; Milburn v. Davis, 17 S. E. Rep. 286; Nugent v. Adsit, 53 N. W. Rep. 620; Cox v. Murphy, 9 S. E. Rep. 604. (5) The trial court did not follow the instructions of this court when the cause was reversed and remanded for a new trial on the former appeal. Thompson v. Irwin, 42 Mo. App. 403.

ARTHUR FRANCIS SMITH and KARNES, HOLMES & KRAUTHOFF for respondents.

(1)  The defense is that "defendants having sold the cattle as agents, are not liable to plaintiffs under an implied warranty of title." But it was distinctly held by this court, on a former appeal in this case: "If the cattle were in fact stolen, defendants are liable to plaintiffs, whether they sold as principals or as agents, for, having no title to property which was stolen, they could convey none to plaintiffs; and, having received the money of plaintiffs on the assertion and claim of ownership, whether as principals or as agents makes no difference, when the property was taken from the plaintiffs' vendee by the actual owner, and the purchase money was repaid to their vendee by the plaintiffs, with the costs, then defendants are under obligation to make it good to plaintiffs." Thompson v. Irwin, 42 Mo. App. 403, 413. This ruling is the law of this case. Hombs v. Corbin, 34 Mo. App. 393, 397; Feurt v. Ambrose, 34 Mo. App. 360, 370; Galbreath v. Newton, 45 Mo. App. 312, 323; Galbreath v. Rogers, 45 Mo. App. 324, 327; Masterson v. Railway, 58 Mo.

App. 572, 575; Bank v. Lumber Co., 60 Mo. App. 255; Cherry v. Railroad, 61 Mo. App. 303; Lane v. Railway, 35 Mo. App. 567, 569; Belch v. Miller, 37 Mo. App. 628, 631; Koch v. Hebel, 40 Mo. App. 241, 242; Rousey v. Wood, 63 Mo. App. 460, 469; Kerr v. Cusenbary, 69 Mo. App. 221, 223; Crecelius v. Bierman, 68 Mo. App. 34, 37; Bank v. Bank, 107 Mo. 412, 414; Railroad v. Bank, 102 U. S. 14, 31. (2) A defendant who answers an amended petition and tries the issue joined, waives the objection of departure.    Fuggle v. Hobbs, 42 Mo. 537, 541; Scovill v. Glasner, 79 Mo. 449, 455; Silver v. Railway, 21 Mo. App. 5, 9; Hubbard v. Quisenberry, 32 Mo. App. 459, 467; Holt County v. Cannon, 114 Mo. 514, 519; West v. McMullen, 112 Mo. 405, 409; Sauter v. Leveridge, 103 Mo. 615, 621; Lawless v. Lawless, 39 Mo. App. 539, 542; State ex rel. v. Gage, 52 Mo. App. 464, 470; Wilson v. Scott, 50 Mo. App. 329, 332.    (3) Defendants received of plaintiffs certain money to which they were not entitled. "When money has been received from the wrongful sale of the personal property of another, the latter may waive the wrong and recover the amount received."    Tamm v. Kellogg, 49 Mo. 118, 120; Johnson-Brinkman Com. Co. v. Bank, 116 Mo. 558, 569; Thompson v. Irwin, 42 Mo. App. 403, 425; Koch v. Branch, 44 Mo. 542, 546; Cary v. Curtis, 3 How. (U. S.) 236, 247; Railway v. McLiney, 32 Mo. App. 166, 176; Jacoby v. Hearn, 32 Mo. App. 566, 571; 4 Wait's Actions and Defenses, p. 469.

EDWARD P. GATES, *Special Judge.*—The transactions out of which the controversy in this case has arisen occurred in the summer of 1879. The plaintiffs and defendants were commission merchants, doing business as such

STATEMENT.

at the stock yards in Kansas City, Kansas; the former under the firm name of Thompson, Payne & Company, the latter under the firm name of Irwin, Allen & Company.  On July 5, 1879, a consignment of seventeen head of cattle was received at the stock yards, shipped in the name of W. H. Moreland.  The defendants were employed by the person who shipped them, to sell these cattle for him on commission.  The plaintiffs having an order from one Clark for cattle of this kind bought the cattle, paid defendants for them, and notified Clark of the same.  Clark came to Kansas City, Kansas, received the cattle and took them to his home in Clay county, Missouri, paying the plaintiffs the amount they had paid defendants for them and fifty cents per head as commissions.  One of the issues made in the case was as to whether plaintiffs bought the cattle on their own account, or simply as agents of Clark; but as the jury found this issue in favor of the plaintiffs, viz., that they had bought on their own account to re-sell to Clark, it will not be necessary to consider this question. The cattle at the time of these transactions actually belonged to John Stack and wife, who lived in Jackson county, Kansas, from whom, the evidence tends to show, they had been stolen about July 3, 1879, by the person who shipped them in the name of Moreland.

Said Stack replevined the cattle from Clark. Thereupon plaintiffs paid Clark the amount they had received from him for the cattle, and then demanded payment of the same from defendants.  The defendants refused to recognize any liability on their part, they claiming that they sold the cattle as agents of Moreland, that they disclosed their agency, and the name of their principal at the time of the sale, and had pointed out Moreland to plaintiffs as the reputed owner of the cattle, and that plaintiffs knew at the time that

they were acting not as principals but as agents or com-mission merchants only in making the sale.

Plaintiffs brought suit against the defendants in the district court of Wyandotte county, Kansas, upon a petition similar to the original petition filed in this case; there was a verdict for plaintiffs, and an appeal to the supreme court of Kansas. The case was re-versed and remanded for a new trial, the court virtu-ally holding that upon the facts as they appeared in evidence defendants were not liable. Irwin v. Thomp-son, 27 Kan. 643.

Plaintiffs dismissed that suit before another trial, and brought this suit in 1882, in the circuit court of Jackson county, Missouri. The petition in this suit states a cause of action *ex contractu.* The

PLEADINGS.    original petition alleged in substance that the defendants sold and delivered to plaintiffs seven-teen head of cattle, and in consideration whereof and that defendants would warrant the title to said cattle, plaintiffs agreed to and did pay defendants $536.61, which was the full value of the cattle; that at the time defendants had the cattle in their possession; that de-fendants covenanted and agreed with plaintiffs that defendants had good title to said cattle, and would and then and there did warrant the title thereto to plain-tiffs, and that they had good right to sell and deliver the same.

The petition then sets out the sale of the cattle by plaintiffs to Clark; that the cattle were not the property of defendants but were the property of one John Stack; the recovery of the cattle by Stack from Clark, repay-ment by plaintiffs to Clark of the purchase price he had paid to them; demand of defendants by plaintiffs for repayment, defendants' refusal, and asks judgment. The original petition is set out in full in the statement of the case on the former appeal to this court. See 42

Mo. App. 408, 409. At the last trial of the case in the circuit court of Jackson county, plaintiffs asked leave and were permitted by the court to amend their petition by inserting after the clause "but were then the property of John Stack," the words "*from whom they had been stolen.*" To this amendment the defendants at the time objected and excepted to the ruling of the court permitting the same.

The defendants' amended answer is a general denial, a plea of former adjudication in the supreme court of Kansas, and that the sales occurred wholly within the state of Kansas, and that under the law of that state defendants were not liable. Plaintiffs' amended reply was a general denial.

In order to understand what questions are now presented to this court for its decision, it is necessary to consider the instructions given and refused by the circuit court at the last trial of the case. From them the theory on which the case was tried will appear. At request of the plaintiffs the court instructed the jury as follows:

INSTRUCTIONS.

1. "If the jury believe from the evidence that the cattle in controversy in this case were stolen from John Stack and his wife, the owners thereof, and shipped to the defendants at the Kansas City Stock Yards, who sold them to plaintiffs, who bought them on their own account for $536.61, and delivered the same to them, and that the plaintiffs turned said cattle over to one Clark, from whom they were subsequently replevied by said John Stack and wife, notice of said suit having been given to both plaintiffs and defendants in this action, and that the plaintiffs repaid to said Clark the price paid by him to plaintiffs for said cattle, then the plaintiffs are entitled to recover from the defendants in this action the sum of $536.61 so paid them by plaintiffs, with interest at six per cent per annum from the

date plaintiffs first instituted suit to the present time, and your verdict will be accordingly." 2. "If the jury believe from the evidence that these cattle in controversy were stolen as defined in the other instructions, then it is wholly immaterial whether defendants acted as principals or agents, and if such cattle were so stolen, it is also immaterial whether the contract and all the dealings between the plaintiffs and defendants concerning the same were made in Missouri or Kansas." 3. "By the term 'stolen' as used in these instructions is meant the felonious taking and carrying away the personal property of another without his knowledge or consent with the intent to deprive the owner of such property, and converting the same to the use of the taker."

The defendants requested the court to instruct the jury as follows:

1. "If the jury believe from the evidence that the plaintiffs bought the cattle for Clark and charged him a commission for their services, then they can not recover, and their verdict must be for defendants." 2. " 'Commission' is the compensation paid by a principal to an agent for the transaction of certain business for the principal by the agent." 3. "If the jury believes from the evidence that plaintiffs and defendants on the fifth day of July, 1879, had all the transactions relating to the sale of the cattle in controversy in the state of Kansas, then their rights are governed by the law of said state, and if the jury further believe from the evidence that defendants sold the cattle as agents of W. H. Moreland, and not as their own, and disclosed their agency and the name of the owner prior to and in the making of the sale, and if the jury further believe from the evidence that the law of the state of Kansas relieves them from liability if they sold as such agents, then plaintiffs can not recover." 4. "In determining

whether defendants acted as agents in making the sale of the cattle, the jury have the right to take into consideration the weigh-ticket given by Buffington, the weighmaster, to defendant, Irwin, and by him given to plaintiff Payne." 5. "In determining whether defendants acted as agents in making the sale, the jury have a right to consider the transaction at the scale when the cattle were weighed." 6. "In determining whether defendants, in making the sale of the cattle in controversy, acted as agents of W. H. Moreland or not, they have a right to consider the order on the stock yards company for the cattle which the defendants gave to the plaintiffs." 7. "There is no evidence that defendants knew that W. H. Moreland was not the owner of the cattle at the time of the sale to plaintiffs." 8. "The court instructs the jury there was no implied or express warranty in the sale of the cattle in controversy." 9. "That while one selling personal property in his possession is presumed in law to warrant the title thereof, yet this possession must be that of the owner or one who sells as owner or one who sells the property as his own. If, then, the jury shall believe from the evidence and all the facts in this controversy that Irwin, Allen & Co., when they sold the seventeen cattle to Thompson, Payne & Co., had possession thereof as agents for W. H. Moreland and sold the same as agents of said Moreland, and that Thompson, Payne & Co., with the full knowledge that Irwin, Allen & Co., were selling the cattle as such agents and not as principals, then the jury will find for the defendants." 10. "If the jury find from the evidence that the cattle in question were procured otherwise than by theft by the person who sold them to defendants or authorized them to sell them, then plaintiffs can not recover."

The court gave instructions numbers 2, 3, 4, 5, 6, 7 and 10, as asked by defendants; but refused to give

numbers 1, 8 and 9 as asked, but of its own motion gave them modified as follows:

1. "If the jury believe from the evidence that plaintiffs bought the cattle for Clark, *and not on their own account*, and charged him a commission for their services, then they can not recover and their verdict must be for defendants." 8. "The court instructs the jury that there was no implied or express warranty in the sale of the cattle in controversy *unless they were stolen.*" 9. "That while one selling personal property in his possession is presumed in law to warrant the title thereof, yet this possession must be that of the owner or one who sells as owner or one who sells the property as his own. If, then, the jury shall believe from the evidence and all the facts in this controversy that Irwin, Allen & Co., when they sold the seventeen cattle to Thompson, Payne & Co., had possession thereof as agents for W. H. Moreland and sold the same as agents of said Moreland, and that Thompson, Payne & Co., with the full knowledge that Irwin, Allen & Co. were selling the cattle as such agents and not as principals, then the jury will find for the defendants, *unless they find that the cattle were stolen.*"

The court also, of its own motion, gave the following instruction: "If plaintiffs purchased the cattle not on their own account, but for Clark, then plaintiffs can not recover in this action; but if they purchased them for themselves, although to fill an order for Clark, then plaintiffs are the proper parties plaintiff in this suit and entitled to a verdict, if, under the other instructions, you find the facts which entitle plaintiffs to recover."

It is thus seen that the controlling questions were not, whether under the law, pleadings and evidence there had been a warranty of title by the defendants and whether or not the title had failed, but *why* it had

failed.    That is, had it failed because the cattle had been stolen from the owner? There were other questions submitted to the jury, but defendants' contention that if they had acted as agents of a principal, disclosed and pointed out at the time of the sale, and that if plaintiffs knew they were selling as agents and not as principals, then they were not liable on an implied warranty, is held to be good if the cattle had not been stolen, *but bad if they had.*    See instructions numbers 1 and 2 given at plaintiffs' request, and numbers 8 and 9 asked by defendants, but modified by the court by adding the clause: "Unless they were stolen" to number 8, and the clause: "Unless they find the cattle were stolen" to number 9 and number 10, given at defendants' request.

Is this the law? If so, then the judgment of the circuit court should be affirmed.    If it is not, then there arises the further questions: *First,* is the decision of this court on the former appeal conclusive of this point, at least as far as this case is concerned; and, *second,* if it is not, are the defendants precluded from raising the question by reason of instruction number 10, given at their request?

I.    It is held in this state that in an action sounding in tort, that is for trover and conversion, brought by the owner from whom the property has been stolen against a party who has sold and delivered the same to another, it is wholly immaterial whether the defendant sold as principal or agent.    There is no contractual relation between him and the owner.    The wrongdoers are all principals, and a person who intermeddles with another's property must know, as far as the owner is concerned, that he or the person who he claims to represent has the right to dispose of the property.    Koch

SALES: stolen property: principal and agent.

v. Branch, 44 Mo. 542; Bank v. Metcalf, 40 Mo. App. 494; Ess v. Griffith, 128 Mo. 50.

On the other hand, the seller and purchaser of personal property stand in a different relation towards each other. Between them it is a matter of contract; and in a suit based on a breach of warranty of title, the warranty must be expressed or implied from a contract. If one in the possession of personal property sells it as his own, the law implies a warranty of title, where there was none expressed. If he has a qualified interest and sells only his interest, then he is bound only to the extent of his interest, whatever that may be. If, in fact, he acts as the agent or broker for another but conceals this fact, then the purchaser has the right to hold him as the owner, for he sells as such and is estopped from denying it. If, however, the agent discloses the name of his principal at the time, and the purchaser knows that he does not claim to be the actual owner, then the purchaser must look to the principal for redress if the title fails, and not to the agent. See Huston v. Tyler, 140 Mo. 266 and 268; Schell v. Stephens, 50 Mo. 379.

If the agent agrees to become personally liable with the principal, as in the case of Schell v. Stephens above cited, then the action must be based on an express and not an implied warranty.

If the purchaser wishes to rely on the credit and solvency of the agent, and to deal with him as the principal, then, with the agent's consent, he can do so, and the agent will be liable as principal. This was the case in Sprague v. Rosenbaum, 38 Fed. Rep. 386. The court states that: "the general rule is that an agent who sells property as such for his known principal is not personally liable on the contract, the presumption being that the purchaser gives credit to the principal

and not to the agent;'' but the court says, further, that in that case ''the testimony shows that the defendants did sell the steers to plaintiff as their own,'' and it was for this reason judgment was given against them. All the above cases are harmonious, and based on the simple and elementary principle—that to hold one for the violation of a contract he must be a party to it; and they hold that an agent is not a party to the contract he assists in making, unless either he agrees to be personally bound or by his conduct, i. e., by concealing the fact that he acts as agent, he leads the purchaser to believe he is dealing with him as principal and not for another.

Of course if an agent makes false and fraudulent representations as to the title of the property, with intent to cheat and defraud the purchaser, then an action in tort, for fraud and deceit, will lie against him by the vendee. Huston v. Tyler, 140 Mo. 268, 269; Hidden v. Griffin, 136 Mass. 229. But this is an entirely different cause of action and requires entirely different proof to sustain it, from an action like this *ex contractu* on a warranty of title. I know of no case, and the learned and industrious counsel for plaintiffs have cited none, that makes any distinction in an action for a breach of warranty of title of personal property, between a case where the title failed by reason of the property having been stolen and where it failed for any other cause, and I see no reason why there should be any. The two questions are, *first*, was there a contract, expressed or implied, of warranty of title between plaintiff and defendant? And, *second*, if so, has the title failed? How or why it failed is wholly immaterial.

II. Is the opinion of this court on the former appeal of this case conclusive of the foregoing questions in this appeal? There is no doubt but this court has

consistently held in a long line of cases, that questions fully considered and decided by this court will not, upon a second appeal, be open to dispute or further controversy.    See long list of cases cited in respondents' brief.    And this is true, although the first ruling was erroneous.    Hombs v. Corbin, 34 Mo. App. 393; Crecelius v. Bierman, 68 Mo. App. 34.    The supreme court has not followed this rule very strictly, but has frequently noted exceptions to it.    The learned judge who delivered the majority opinion in this court, on the former appeal, states: "If the cattle were in fact stolen defendants are liable to plaintiffs, whether they sold as principals or as agents, for having no title to property which was stolen they could convey none to plaintiffs; and having received the money of plaintiffs on the assertion and claim of ownership, whether as principals or as agents, makes no difference, when the property was taken from plaintiffs' vendee by the actual owner and the purchase money was repaid to their vendee by the plaintiffs with the costs, then defendants are under obligations to make it good to plaintiffs." 42 Mo. App. 413.    This part of the opinion standing by itself would seem to justify plaintiffs' contention, but a further consideration of the very able judge's conclusions will show that it was not intended to have this effect, and that it was not intended to eliminate the question as to whether or not defendants acted as the agents of a disclosed principal in making the sale, for on page 417 it is said: "As the judgment in this case must be reversed because of the considerations hereinbefore stated, it seems proper to refer to some principles of law which should govern in any future trials;" and, then, on page 422: "If the competency of these papers in evidence were conceded they could have no effect in determining of themselves the fact of agency, but are only circum-

*Marginal note:* APPELLATE practice: ruling in former appeal binding in second.

stances bearing upon the controverted fact, so that the question of agency should be submitted to the jury on proper instructions. Regarding the question as to whether defendants made the sale in this case as principals or as agents, *it is as has been just said a question for the jury under proper instructions, which* should present also all the issues involved in this controversy.''

If the fact that the cattle had been stolen made it immaterial whether or not the defendants sold as principals or agents, then no question of agency could arise and there would be no such question to submit to the jury. In fact instruction number 2, given at plaintiffs' request, *did take* from the jury the question as to whether or not defendants made the sale in this case as principals or as agents, if the cattle had been stolen.

If we should hold that the former decision is that the question of agency is immaterial in this case, but we should also find that therein it is contrary to a subsequent decision of our supreme court, then the former decision can not be followed. Hamilton v. Ins. Co., 35 Mo. App. 263; Reichla v. Gruensfelder, 52 Mo. App. 60; Buchanan v. Cole, 55 Mo. App. 495. The amendment to the state constitution, adopted November, 1884, states: ''The last previous rulings of the supreme court on any question of law or equity shall, in *all cases*, be controlling authority in said courts of appeal.'' See R. S. of 1889, page 88, last clause of sec. 6.

*subsequent ruling of supreme court.*

I am of the opinion that the decision of the supreme court in Huston v. Tyler, 140 Mo. 252, does hold that the question of agency is the material one in such a case. It is said in that case, on page 266: ''But in this case there is no charge made that defendant was the seller of the note, and if he was, and disclosed his agency, etc., he would not impliedly warrant the genuineness or value of the paper which he transferred by

delivery." And again, on page 268: "If the evidence tended to show that defendant was the agent of Smith alone to procure the money for him and he disclosed his agency to plaintiff and was ignorant of the forgery of the names of the sureties and acted in good faith, then the law is settled that he can not be held for the acts of his principal. When the principal is disclosed and the agent is known to be acting as such, the latter can not be made personally liable." The case of Huston v. Tyler, *supra*, was one where it appeared the names of certain sureties had been forged to a note, but the principle therein declared is equally applicable to this case.

III. Are the defendants precluded, by reason of instruction number 10 given at their request, from asserting in this court that the controlling question on this branch of the case is: "did the title fail?" and *not why* it failed?

Plaintiffs' petition before it was amended stated a good cause of action for a breach of warranty of title against the defendants. At the last trial, the plaintiffs, against the protest of the defendants inserted the amendment that the cattle had been stolen from the true owner. This amendment could in no wise increase the defendants' liability. If it is given any force at all, its effect was only to narrow the right to recover as far as the plaintiffs are concerned, by compelling them to establish to the satisfaction of the jury, not only that John Stack at the date of the sale to the plaintiffs was the true owner of the cattle; but also, what otherwise would have been immaterial, that they had been stolen from him. Because this new issue was presented to the defendants over their objections, and therefore they asked an instruction that if the jury found the cattle had not been stolen they should find for them, they can

PLEADING: amendment: instruction: estoppel.

not be said to have waived all their other defenses, and to have asked that their liabilities should be determined by this fact alone.   The evidence they introduced at the trial and the other instructions asked by them, show clearly that they had no such intention. It is settled that a party can not try a case below on one theory, and assert another and different one on appeal; but there is no such attempt here.   Defendants have consistently contended from the beginning, that if they acted as agents of a disclosed principal, plaintiffs could not recover.   The law on this point is fairly and correctly set out in the ninth instruction, as it was asked by the defendants.

The plaintiffs ask that even if they are not entitled to recover on a breach of a warranty of title by defendants, that the court should find that the defendants have wrongfully received certain money from plaintiffs, and that they are entitled to recover it back in this suit as in an action for money had and received; or that as John Stack had a cause of action against defendants, that plaintiffs be subrogated to his rights against them.   Neither contention of plaintiffs is tenable.

*Action: pleading: money had and received: subrogation.*

It is clear that if money is paid to a known agent who pays it to his principal, then the principal alone is responsible for it.   And again, the plaintiffs bore no such relation to John Stack in this transaction, as that they could be subrogated to any rights he had. As to him, they were wrongdoers equally with defendants and Clark.   Moreover, it has never been held that because there is but "one form of action in this state" a plaintiff can recover on a different cause of action than the one stated in his petition.   It is said in Huston v. Tyler, *supra:* "That though our code speaks of every suit brought thereunder as a

'civil action,' yet this extends only to the form of the action, and not to its substance.'' In short, ''the cases above cited recognize the doctrine that the *fundamental requirements* of good pleading are and must remain the same, whether under code or at common law.''

Plaintiffs allege in their petition as their cause of action a breach of warranty of title to certain personal property by defendants, an entirely different one than a suit for money had and received. Again, their suit is one at law pure and simple, while an action of subrogation is wholly an equitable proceeding. To permit a recovery on such grounds would tend to boundless confusion both in pleadings and practice. But, as above stated, plaintiffs in an action for money had and received would have no greater rights than under the present one, and as between common wrongdoers, no right of subrogation exists. Of course by wrongdoers as used herein, is not meant that there was any moral obliquity on the part of either the plaintiffs or the defendants. Each acted innocently and with entirely good faith, but legally they were all wrongdoers as to John Stack. .

The circuit court properly admitted all the evidence offered bearing on the question as to whether the defendants sold the property as agents of Moreland, and whether this was known at the time to the plaintiffs. It would be well for all concerned if this prolonged litigation could be brought to an end; but the foregoing questions of fact are for a jury to decide, and therefore the judgment is reversed and the cause remanded for a new trial. The other judges concur. GILL, J., having been of counsel, not sitting.