STATE BANK OF IOWA FALLS, Respondent, v. AMERICAN HARDWOOD LUMBER COMPANY, Appellant.

**St. Louis Court of Appeals, December 22, 1906.**

1. **PLEADING: Variance.** In an action upon a draft alleged to be drawn in favor of the plaintiff, a bank, the draft sued on, being payable to the cashier of the bank, was properly admitted in evidence where it was shown that he was cashier and that he took the draft as agent for the plaintiffs; such evidence was not a material variance from the allegations of the petition.

2. ———: ———: **Amendments.** In such case it was proper to allow an amendment of the petition to conform to the proof showing the relation of the cashier to the bank.

3. **BILLS AND NOTES: Agreement to Accept: Bill Corresponding with Agreement.** Under section 445, Revised Statutes of 1899, a promise in advance to accept a draft to be drawn on the promisor is not binding unless the draft when drawn corresponds in all respects to that authorized; but where a draft was drawn corresponding in all respects with a prior agreement to accept the same, except there was added the words "with exchange," and where payment was refused for other reasons and not because the words were added, the promisor was liable on the draft notwithstanding the addition of such words.

4. ———: **Practice: Damages for Non-Payment.** Under section 449, Revised Statutes of 1899, where a draft was drawn out of this State on a person within this State, in accordance with a previous agreement by such person to accept the same, and the drawee refused to accept or pay it, the payee could recover ten per cent damages in addition to the amount of the draft.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald*, Judge.

AFFIRMED.

*Walther & Muench* for appellant.

(1) The petition declared upon a draft payable to the order of plaintiff. The draft offered in evidence was payable to "F. D. Peet, Cashier." This draft does not support the allegation of the original petition and there was a complete failure of proof. Gray v. Race, 51 Mo. App. 553; Beck v. Ferrara, 19 Mo. 30; Hobbs v. Bank, 97 Ga. 524; Thompson v. Stetson, 15 Neb. 112; Christian College v. Hendley, 49 Cal. 347. (2) It was error to permit plaintiff to amend its petition after the case had been submitted, so as to make the action one upon a draft payable to plaintiff's cashier, instead of a draft payable to plaintiff. The code authorizes an amendment only when the amendment does not change substantially the claim or defense. R. S. 1899, sec. 657; Faulkner v. Faulkner, 73 Mo. 327. (3) In order to make a promise to accept a bill before it is drawn amount to an acceptance, it is necessary: first, that the writing describe the bill to be drawn in terms not to be mistaken; second, that the bill be taken upon the faith of the writing; third, that a valuable consideration be given for the bill. 4 Am. Eng. Ency. Law (2 Ed.), p. 236; Bank v. Bohart, 84 Mo. App. 421; Brinkman v. Hunter, 73 Mo. 180; Bank v. McFarlane, 5 Hill's (N. Y) 432. (4) A promise in writing to accept a bill not yet in existence is to be strictly construed in favor of the promisor. (5) One who promises in advance to accept or pay a bill of exchange is bound upon such promise only when the bill in its terms conforms to the terms of his offer. Adding "exchange" to the amount authorized to be drawn for, is a departure from the terms of the offer. Lindley v. Bank, 76 Iowa 629.

*Charles S. Reber* for respondent.

(1) The amendment of the petition was properly allowed. It but conformed the allegations to the proof. It changed the cause of action not at all. R. S. 1899, sec. 657; Goodwar v. City of Kahoka, 100 Mo. App. 278. (2) Indeed it is extremely doubtful whether it was even necessary. Commercial Bank v. French, 21 Pickering 486; Railroad v. Benedict, 5 Gray 561; Baldwin v. Bank of Newberry, 68 U. S. (1 Wall.) 234; Railroad v. Coe, 24 Vt. 24; Bailey v. Ins. Co., 6 Hill 476. (3) The judgment was clearly for the right party. The draft drawn does not vary from the terms of the authority in any particular, and was acquired by plaintiff for a valuable consideration. Launesse v. Baker, 3 Wheat. 101; Bullock v. Taylor, 39 Mich. 137; Bank v. Burkhard, 100 U. S. 686; Odie v. Bank, 45 N. Y. 735.

STATEMENT.—Omitting caption, the petition is as follows:

"Plaintiff states that it is a banking corporation, duly organized and existing under the laws of the State of Iowa; that defendant is a corporation organized and existing under the laws of the State of Missouri; that on April 27, 1904, defendant wrote to the Iowa Falls Manufacturing Company, a corporation of the State of Iowa, doing business at Iowa Falls, in said State, that said last mentioned corporation might draw a draft upon defendant for the sum of $730.28, and that said draft would be accepted and paid by defendant when so drawn, said letter being herewith filed and marked 'Exhibit A;' that upon receipt of said letter, and on the second day of May, 1904, the said Iowa Falls Manufacturing Company did draw a draft on defendant in favor of plaintiff in said sum of $730.28, whereby said Iowa Falls Manufacturing Company requested defendant at sight to pay to the order of plaintiff, said sum for value received and to charge the same to the ac-

count of said Iowa Falls Manufacturing Company, the drawer thereof, said draft being herewith filed and marked 'Exhibit B;' that plaintiff, having previously been shown said letter from defendant to said Iowa Falls Manufacturing Company, and acting upon the faith of the promise therein contained, acquired said draft for a valuable consideraton, to-wit: The sum of $730.28, whereby defendant became bound to pay to plaintiff the amount named in said draft; that nevertheless defendant has refused to pay said draft or any part thereof, though demanded so to do by plaintiff, and the same still remains wholly due and unpaid. Wherefore plaintiff prays judgment against defendant for said sum of $730.28, with interest and costs, and as damages for the non-payment of said draft a further sum equal to ten per cent on the principal sum specified in said draft, in accordance with the provisions of the statute in such cases made and provided."

The answer is a general denial.

The letter. (Exhibit A) referred to in the petition is as follows:

"St. Louis, Mo., April 27, 1904.
"Iowa Falls Mfg. Co.,
"Iowa Falls, Iowa.

"Gentlemen: Your draft for $730.38 was presented to us to-day, but we requested that it be returned for correction. The amount due (see note you paid) was $730.28. We are ready to accept and pay a draft for that amount, and can only account for its being for more than this figure by thinking that your bookkeeper erred in drawing the papers. Please correct, whereupon we shall promptly take care of it. With kind regards, and trusting that this is satisfactory to you, we are,

"Very respectfully,
"AMERICAN HARDWOOD LBR. CO.,
"G. H. COTTRILL, Secy."

The draft (Exhibit B) is as follows:

"STATE BANK OF IOWA FALLS,
        "Iowa Falls, Iowa, May 2, 1904.
    "Pay to the order of Frank D. Peet, Cashier,
$730.28, seven hundred thirty dollars and 28-100, with
exchange, value received and charge to account of Iowa
Falls Mfg. Co.            By C. D. SHAW, Pres."

The issues were tried by the court without the aid
of a jury. The evidence tends to show that the Iowa
Falls Manufacturing Company, an Iowa corporation,
having its place of business and chief office at Iowa
Falls, in said State, and defendant, a Missouri corpora-
tion, having its chief office and place of business in the
city of St. Louis, Missouri, were engaged for some time
prior to April 27, 1904, in the business of "kiting" checks,
drafts, etc., between themselves through plaintiff bank
at Iowa Falls, and the State National Bank, in the city
of St. Louis, the respective banks of the two parties.
Prior to April 18, 1904, defendant company had either
deposited for collection, or had discounted with the
State National Bank of St. Louis, three items payable
by the Iowa Falls Manufacturing Company, one note
for three hundred dollars and one note for six hundred
and fifty dollars, due on the nineteenth day of April,
1904, and a draft for $730.28, which were forwarded to
plaintiff bank by the State National Bank for collec-
tion. In regard to these items, defendant, on April 18th,
wrote the Iowa Falls Manufacturing Company, as fol-
lows:

    "Noting that one of your notes was due to-day (al-
though you had not so advised us, as requested) we
wired you to pay same and draw on us to cover. We
trust you have done this, in order to save yourself pro-
test charges. We enclose herewith our check for $300
and our check for $650. This covers the next two notes
due we believe to-morrow, the nineteenth. Kindly take

care of all this, paying notes as due, and acknowledge receipt."

This letter was preceded by the following telegram of the same date: "Draw on us for note due to-day. Don't allow same to be protested."

Mr. Peet, cashier of plaintiff bank, testified the president of the Iowa Falls Manufacturing Company brought him the telegram, told him of the arrangement between his company and defendant company, in respect to the two notes maturing on the day following, and requested him to make a sight draft for $1,681.98 to cover the three items; that he made the draft and discounted it for the Iowa Falls Manufacturing Company and applied the proceeds to the payment of the draft for $730.28, and the two notes to fall due the next day, and in payment of one dollar and seventy cents exchange, and the two notes, aggregating $950, and the draft (for $730.28) were cancelled and delivered to the Iowa Falls Manufacturing Company, and the proceeds of the draft for $1,681.98 were remitted to the State National Bank, from whom the two notes and draft had been received for collection, and at the same time the draft of the Iowa Falls Manufacturing Company to the defendant company for $1,681.98 was forwarded to St. Louis for collection. On its way to St. Louis this draft passed the letter of April 18th, supra, on the way to Iowa Falls, inclosing two checks, one for three hundred dollars and one for six hundred and fifty dollars, for the Iowa Falls Manufacturing Company. Consequently, the defendant refused to pay the draft for $1,681.98, and wired the Iowa Falls Manufacturing Company, on April 20th, as follows: "Order draft recalled. Made new one for seven hundred and thirty dollars. You have our check covering balance;" and at the same time wrote as follows:

"In explanation of our telegram would state we have already mailed you checks to cover notes which are

due, which check you probably have received ere this. We requested that you would recall your sight draft and make one for $730, which will be duly honored. We thought best to wire you of this fact, which we have accordingly done this morning, and we trust this will meet your approval."

In the meantime, the Iowa Falls Manufacturing Company had returned the two checks, and on April 20th wired defendant as follows: "Take care of draft; have returned your checks," and followed the telegram with the letter quoted below:

"We have your favor of the eighteenth instant, together with the . . . checks to take up the note here at the bank. . . . We are sorry that . . . letter was received too late to use these checks, as we drew on you for the three notes at the bank yesterday, so we are returning your two checks enclosed herewith. Trusting the above is satisfactory, we remain," etc.

The draft for $1,681.98 was protested and returned to plaintiff. On April 22d, defendant wrote the Iowa Falls Manufacturing Company, as follows:

"Yours 20th. Your draft has already gone back, so we take the liberty of returning our two checks and we suggest that you draw on us for the balance. With kind regards, and asking Mr. Pelton if he is in the market for any lumber, we remain," etc.

Mr. Peet testified that when the draft for $1,681.98 was returned, he called in the president of the Iowa Falls Manufacturing Company, who brought the above letter and defendant's two checks, one for three hundred dollars and one for six hundred and fifty dollars, and the draft for $1,681.98 was taken up by these two checks and a draft drawn by the Iowa Falls Manufacturing Company on defendant for $735.28 "with exchange" (in which draft was included $3.40 for exchange and protest fees on prior drafts), and thereupon cancelled and surrendered the draft for $1,681.98 and forwarded the

new draft for $735.28 to St. Louis for collection. This draft was protested for non-payment, and the letter of April 27th (Exhibit A) followed. This letter was brought to plaintiff by the president of the Iowa Falls Manufacturing Company and the draft sued on was drawn on the faith of it. It was also protested for non-payment. The secretary of defendant, in respect to the reason why defendant refused to pay the draft, testified as follows:

"Q. Did you refuse to pay on the ground that exchange was demanded?

"Mr. Walther: I object to that.

"The Court: Objection overruled; to which ruling defendant then and there duly excepted.

"A. I have already stated we refused to pay because the Iowa Falls Manufacturing Company owed us money, and we would have refused on account of exchange.

"Q. You did not refuse on that ground, so you said, you did not refuse on that ground, isn't that correct?

"A. If exchange had not been waived, we would have refused on that ground."

The Iowa Falls Manufacturing Company has since gone into voluntary bankruptcy. On the trial, defendant objected to the draft as evidence on two grounds: first, that it varied from the instrument described in the petition; and, second, that as it was drawn for $730.28, "with exchange," it was for a greater sum than was authorized by defendant's letter, on the faith of which it was drawn. This objection was overruled by the court, and after all the evidence was in and the case submitted, the court permitted plaintiff to amend its petition by inserting after the words, "pay to the order of plaintiff," in the twelfth line of the petition, the words, "under the name of its cashier, F. D. Peet."

Plaintiff asked no instructions. Defendant asked the following, which the court refused:

"1.   The court declares the law to be, that the draft read in evidence by the plaintiff, being made payable to F. D. Peet, cashier, does not in anywise tend to sustain the allegations of plaintiff's petition nor correspond to the description of the draft described in said petition and declared upon therein, and the court, therefore, finds that there has been a complete failure to prove the cause of action herein sued upon.

"2.   The court declares, at the close of all the evidence, that, under the pleadings and the evidence, the finding must be for the defendant.

"3.   The court declares the law to be, that the letter of April 27, 1904, from defendant to the Iowa Falls Manufacturing Company, does not amount to an acceptance of, or agreement to accept, the draft herein sued upon.

"4.   The court declares the law to be, that an agreement in writing to accept a draft or bill of exchange before the same has been drawn, must point to the particular bill and describe it in express terms, and the court further declares that the letter of April 27, 1904, from defendant to the Iowa Falls Manufacturing Company, read in evidence and filed with the petition as 'Exhibit A,' is not sufficient to constitute an acceptance or agreement to accept the draft herein sued for, because said letter fails to specify any of the terms of the proposed draft except the amount thereof.

"5.   The court declares the law to be, that if the court, sitting as a jury, should find from the evidence that plaintiff, before the receipt of the letter from defendant to the Iowa Falls Manufacturing Company, being 'Exhibit B,' referred to in the petition, and read in evidence, had already remitted to its correspondent at St. Louis, the State National Bank of St. Louis, the amount agreed by plaintiff to be advanced by it for said Iowa Falls Manufacturing Company on account of the draft herein sued upon, and if the court further believe

that plaintiff did not, after the aforesaid letter had been shown to it, make any further payments in consideration of the draft herein sued upon, then the court's finding must be in favor of defendant."

The judgment of the court was for plaintiff for the draft and interest, $768.61, and ten per cent ($73.03) on the principal sum as damages for the refusal of defendant to accept or pay the draft and letting the same go to protest.

BLAND, P. J. (after stating the facts).—1. The first contention of defendant is, the court erred in admitting the draft in evidence. The draft was described in the petition as payable to plaintiff bank. It showed on its face that it was payable to "Frank D. Peet, cashier." In all other particulars it corresponded to the description set out in the petition. Now it is a well-settled rule of practice, that a party cannot sue on one cause of action and recover upon another. [Weil v. Posten, 77 Mo. 284; Sumner v. Rogers, 90 Mo. 325, 2 S. W. 476; Gurley v. Railway, 93 Mo. 445, 6 S. W. 218; Reed v. Bott, 100 Mo. 62, 12 S. W. 347, 14 S. W. 1049; Huston v. Tyler, 140 Mo. 1. c. 264, 36 S. W. 654, 41 S. W. 795; Whipple v. Peter Cooper Building & Loan Assn., 55 Mo. App. 554; Mason v. Railway, 75 Mo. App. 1.] But a mere variance between the proof and the allegations of the petition is not of itself sufficient to defeat a recovery. The rule is well stated by WAGNER, J., in Jones v. Louderman, 39 Mo. 1. c. 290, thus:

"The code of practice has not changed the well-known rule of evidence as it existed at common law, that the allegations and the proofs must substantially correspond. A party cannot declare for one cause of action and recover on an entirely different and distinct cause. If there is a variance in the evidence, he should amend his pleadings so as to make them conform to the truth, else the objection will be fatal."

And the variance is not material, unless it actually

misleads the opposite party to his prejudice. [Section 655, R. S. 1899.] The variance between the petition and draft was only an apparent one and was explained away by the evidence of Peet, the cashier, who testified that he was cashier of plaintiff bank, and in taking the draft was acting as its cashier and agent.

In Baldwin v. Bank of Newbury, 68 U. S. 234, the action was on the following promissory note:

"3,500.                    Boston, Dec. 9, 1853.

"Five months after date I promise to pay to the order of O. C. Hale, Esq., cashier, thirty-five hundred dollars, payable at either bank in Boston, value received.                         J. W. BALDWIN."

Hale testified that he was cashier of the plaintiff bank and in taking the note was acting as cashier and agent of plaintiff. It was held the evidence was competent and that the suit was properly brought in the name of the bank.

In Commercial Bank v. Franch, 21 Pick. 486, it was held that where a promissory note was made payable to the cashier of the Commercial Bank, or his order, and the consideration proceeded from the bank, an action on the note might be maintained in the name of the bank as promisee. At pages 490-1, the court said:

"A corporation being an incorporeal being and having no existence but in law, can neither make nor accept contracts, receive nor pay out money, but by the agency of its officers. They are the hands of the corporation by which they execute their contracts, and receive and make payments. Of these officers the cashier is the principal. If the note had been made to the corporation, by its appropriate name, the same officer would have demanded and received payment, or would have given notice of non-payment and protested it, and, had it been negotiated, would have made the indorsement, and in precisely the same form as he would upon this note. . . .

"The principle is, that the promise must be understood according to the intention of the parties. If in truth it be an undertaking to the corporation, whether a right or a wrong name, whether the name of the corporation or of some of its officers be used, it should be declared on and treated as a promise to the corporation." In Eastern Railroad Co. v. Benedict, 5 Gray 561, the same ruling was made on a similar state of facts.

On the evidence of Peet, we think it is clear the action was properly in the name of the bank, who was the real party in interest and from whom the consideration moved for the draft, and we think, also, the amendment of the petition after the cause had been submitted, but before final judgment, was proper.

2. The second contention of defendant is that its peremptory instruction for nonsuit should have been given for the reason the Iowa Falls Manufacturing Company, by adding "with exchange" to the amount of the draft, exceeded the authority conferred upon it by defendant's letter of April 27th. Section 445, R. S. 1899, provides as follows:

"An unconditional promise, in writing, to accept a bill before it is drawn, shall be deemed an actual acceptance in favor of every person to whom such written promise shall have been shown, and who, upon the faith thereof, shall have received the bill for a valuable consideration."

Under this section there was an actual acceptance of the draft, if it corresponded in amount to the sum authorized by the letter, as it is not claimed that it was not drawn within a reasonable time or that the letter did not sufficiently describe the bill to be drawn, or that it does not correspond in all other respects with the one authorized to be drawn.

In Lindler v. Bank, 76 Iowa 692, the facts were, George Barro sent a telegram from Los Angeles, Cali-

fornia, to defendant, directing it to transmit two thousand dollars by telegraph to plaintiff at Los Angeles and charge the amount to his account, he having at the time a large amount with the defendant bank. On the next day defendant telegraphed plaintiff that the bank would pay Barro's draft on it for two thousand dollars. Barro drew his draft for two thousand dollars with exchange on New York. It was subsequently presented, but defendant refused to accept or pay it. The exchange amounted to two dollars. The court, at pages 631-2 said:

"If a bill is drawn corresponding in terms with his offer, and is received by another in reliance on the offer, he will be liable from the time as an acceptor. But the bill drawn must correspond in terms with his offer, or no such result will follow. His liability, if any, is created by his contract, and it is impossible that he should be bound by conditions or stipulations to which he never gave his consent. Judged by this rule, it is manifest that defendant is not liable. Its offer was to pay a specified sum on the draft of Barro. The offer implied, of course, that the payment was to be made at Waterloo, that being its place of business. But the draft required either that the money should be paid in New York, or that an additional amount should be paid to cover the exchange. In effect, it was a draft for $2,002, while defendant's promise was to pay one for two thousand dollars."

In Ulster County Bank v. McFarlan, 5 Hill (N. Y.) 432, "M. drew a letter of credit, to continue in force one year, in these words: 'I authorize you to draw on me at ninety days from time to time for such amounts as you may require, provided that the whole amount running and unpaid shall not exceed $3,000.' Held, that the latter clause did not limit the aggregate amount of bills to be drawn during the year, but only the amount

which it was allowable to have outstanding at any single period.

"Held also, that the authority conferred by the letter was limited to bills drawn payable ninety days after sight, and did not extend to such as were drawn at ninety days after date."

In Brinkman v. Hunter, 73 Mo. 172, it was held that a promise in writing to pay a draft to be drawn for six hundred and eight dollars and ninety-two cents was a promise to pay that sum and no more, and that the promisor was not bound to accept the payment of said sum on a draft drawn on him for six hundred and eighty dollars and ninety-two cents, or in other words, to submit to a partial acceptance or payment.

The evidence in this case shows that the draft for seven hundred and thirty-five dollars and twenty-eight cents, mentioned in the letter of April 27th, was returned therewith to the Iowa Falls Manufacturing Company was for seven hundred and thirty-five dollars and twenty-eight cents "with exchange." This draft, as the letter shows, was returned, not because exchange was added, but for the reason the draft was drawn for five dollars in excess of what defendant claimed was due the Iowa Falls Manufacturing Company. Hence, the letter is tantamount to a written promise to the Iowa Falls Manufacturing Company to accept a duplicate of this draft, provided five dollars be taken off its face. Defendant knew from its previous course of dealing with the Iowa Falls Manufacturing Company that the draft, if drawn, would be discounted by the plaintiff and forwarded to St. Louis for collection, and that the exchange charges would accrue which it in honor and justice ought to pay. The evidence of defendant's secretary, to whom the draft was presented for payment, also shows that he did not refuse payment for the reason exchange was added, but for the reason the Iowa Falls Manufacturing

Company had failed to pay a debt it owed defendant. The written promise to accept the draft should be construed in the light of these circumstances, and when so construed we think the written promise of defendant was' to accept the draft for seven hundred and thirty dollars and twenty-eight cents "with exchange."

3. The third contention is that the judgment is excessive in that ten per cent of the principal sum was awarded as damages on account of the failure of defendant to accept or pay the draft and for suffering it to go to protest. Section 449, Revised Statutes 1899, expressly provides for an allowance of ten per cent damages on any note or bill drawn out of this State on any person within this State which shall on due presentation for acceptance or payment be protested for nonacceptance or non-payment.

The judgment is clearly for the right party and is affirmed. All concur.